[Cite as *Bethel Oil & Gas, L.L.C. v. Redbird Dev., L.L.C.*, 2024-Ohio-5285.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY


BETHEL OIL AND GAS, LLC,　　　　　:
 et al.,

　　　　　　　　　　　　　　　:

　　　　　　　　　　　　Plaintiffs-Appellants,　　Case No.　23CA5

　　　　　　　　　　　　　　　:

　　　　　　　　　　　　v.

　　　　　　　　　　　　　　　:

REDBIRD DEVELOPMENT, LLC,
 et al.,　　　　　　　　　　　　　　:　　DECISION
AND JUDGMENT ENTRY

　　　　　　　　　　　　Defendants-Appellees.　　:
_____

APPEARANCES:

J. Zachary Zatezalo, Moundsville, West Virginia, for appellants.

Clay K. Keller and Andrew N. Schock, Akron, Ohio, for appellees Redbird Development, LLC, Dean Patrick Decker, III, and Hall Drilling.

Steven B. Silverman, Pittsburgh, Pennsylvania, and Matthew S. Casto, West Virginia, for appellees Diversified Production LLC, Nuverra Environmental Solutions, Inc., and Heckmann Water Resources (cvr), Inc.

Brandon Abshier and Steven A. Change, Columbus, Ohio, for appellees Deeprock Disposal Solutions, LLC, Deeprock Disposal Operating LLC, Brian Chavez, and Christyann Heinrich-Chavez.

Chad R. Ziepfel, W. Stuart Dornette, and William E. Braff, Cincinnati, Ohio, for appellees Tallgrass Operations LLC and K&H Partners LLC.

Jeffrey L. Finley, Gallipolis, Ohio, for appellees J.D. Drilling Co. and James E. Diddle.
_____
CIVIL APPEAL FROM COMMON PLEAS COURT

DATE JOURNALIZED:10-23-24
ABELE, J.

{¶1}    This is an appeal from a Washington County Common

Pleas Court judgment that dismissed the complaint filed by (1)

Bethel Oil and Gas, LLC, (2) Robert E. Lane, and (3) Sandra K.

Lane, plaintiffs below and appellants herein.  Appellants assign

the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT COMMITTED REVERSIBLE ERROR
> BY DISMISSING THE PLAINTIFFS' CASE ON THE
> PLEADINGS WHERE THE PLAINTIFFS CREDIBLY
> ALLEGED THAT THE DEFENDANTS' LARGE-VOLUME,
> HIGH-PRESSURE, WA[S]TE-FLUID INJECTION
> OPERATIONS HAVE COLLECTIVELY CAUSED FLOODING
> DAMAGE TO THE DEVELOPMENT OF PLAINTIFFS'
> MINERAL ESTATE."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT COMMITTED REVERSIBLE ERROR
> BY REFUSING PLAINTIFFS LEAVE TO AMEND THEIR
> COMPLAINT WHERE THE ALLEGATIONS PLAINLY GAVE
> RISE TO COGNIZABLE CLAIMS FOR DAMAGES."

{¶2}    In May 2022, appellants filed a complaint that alleged

16 defendants' waste-fluid injection operations have caused

toxic waste to migrate to appellants' property.  Appellants

averred that this toxic waste extensively and permanently

damaged their property.  The complaint named the following

defendants: (1) Redbird Development, LLC; (2) Dean Patrick Decker III; (3) Hall Drilling, LLC; (4) Deeprock Operating Solutions, LLC; (5) Deeprock Disposal Solutions, LLC; (6) Fountain Quail Drilling, LLC; (7) Brian Chavez; (8) Christyann Heinrich-Chavez; (9) J.D. Drilling Company; (10) James E. Diddle; (11) K&H Partners, LLC; (12) Tallgrass Operations, LLC; (13) Reliable Enterprises, Inc.; (14) Diversified Production, LLC; (15) Heckmann Water Resources (cvr), Inc.; and (16) Nuverra Environmental Solutions, Inc.[1]

{¶3} The Lanes reside in, and own property in, Washington County. Mr. Lane is the owner, operator, and President of Bethel Oil and Gas, LLC (Bethel), a gas and oil-drilling production company that has gas and oil reservoirs in Washington and Athens counties. Bethel operates on property that

---

[1] This appeal involves 14 of the 16 defendants named in the complaint and those 14 defendants form five groups: (1) Redbird (Redbird Development, LLC, Dean Patrick Decker III, and Hall Drilling, LLC); (2) Tallgrass (Tallgrass Operations, LLC and K&H Partners, LLC) (3) Deeprock (Deeprock Operating Solutions, LLC, Deeprock Disposal Solutions, LLC, Brian Chavez, and Christyann Heinrich-Chavez); (4) Diversified (Diversified Production, LLC, Heckmann Water Resources (cvr), Inc., and Nuverra Environmental Solutions, Inc.); and (5) JDDC (J.D. Drilling Company and James E. Diddle). This opinion uses "appellees" collectively to mean these five groups of defendants.

4

"[appellants] have an exclusive and absolute ownership interest in the right to develop and produce gas and oil from or beneath [appellants'] property to the deepest possible depths of Ohio's gas and oil reservoirs."

{¶4} Appellants further possess "absolute and exclusive ownership interest in the right to drill, develop, and produce the gas and oil reservoirs, covering approximately 1,471 acres in Washington County, Ohio and 2,317 acres in Athens County, Ohio," and they also have "an ownership interest in the equipment, business infrastructure, and manpower to commercially develop gas and oil." Bethel "has drilled, owned and/or operated a number of subsurface gas and oil wells in the Berea Sandstone Formation reservoirs in" Washington and Athens counties.

{¶5} The 16 defendants engage in fracking operations. Fracking produces "residual waste fluids" that contain "various salts" and "toxic substances that intermix underground, including but not limited to metals (e.g., barium, manganese, iron, and strontium), benzene, toluene, ethylbenzene, xylenes, oil, grease, radioactive materials (including radium), fracking additives and/or chemicals, and chemical transformation

products."  Additionally, these residual waste fluids can "become contaminated with other chemicals commonly used in hydro-fracking operations including but not limited to diesel fuel, hydrocarbons, barite, pesticides, surfactants, and defoaming agents."  Fracking "operations result in the creation of significant volumes of waste fluid."  Ohio law regulates the disposal of this waste fluid and requires that the waste fluid "be particularly disposed of in strict accordance with the Ohio Revised Code, the Ohio Administrative Code, and the laws of Ohio generally."

**{¶6}**   Each appellee owns, operates, "and/or" manages "one or more" injections wells "in Washington County, Ohio and/or Athens County, Ohio" "to accept, handle, inject, deposit, accumulate, manage, store, and/or possess waste fluids including those generated as a consequence of regional, hydraulic fracturing operations."  Redbird operates Redbird #4 and Redbird #5. Deeprock operates American Growers 1 and Heinrich Unit 1.  JDDC operates George & Clara Conroy 1 and Earl & Ellen Showalter. Tallgrass operates K&H Partners LLC 1 and K&H Partners LLC 2. Diversified operates Hattie L Flower and Nichols 1-A.  Reliable operates Frost M.

{¶7}    Appellants alleged that appellees inject waste fluid from their fracking operations into their respective injection wells, and this waste fluid contaminated appellants' property. Appellees "conduct their waste fluid injection operations within sufficient proximity to [appellants'] Property and the Bethel Wells to infiltrate, invade, flood, contaminate, pollute, and damage the gas and oil reservoirs beneath [appellants'] Property and the Property itself, including but not limited to certain of the Bethel Wells, with harmful volumes of waste fluid." Appellees' "Injection Wells have infiltrated, flooded, contaminated, polluted, and/or damaged certain of the Bethel Wells and damaged [appellants'] and [their] Property."

{¶8}    An August 2020 Ohio Department of Natural Resources (ODNR) investigation reported that "significant quantities of injection waste fluid from the Redbird #4 Class II Injection Well" had been found "in a number of producing gas wells located in the Berea Sandstone formation that had historically produced little or minimal water, including but not limited to one of the Bethel Wells:  B.P. Pinkerton #1."  Redbird purportedly relocated Redbird #4 to a lower depth, but appellants "have continued to experience continuing and expanding losses of gas

and oil production from the Bethel Wells."  Appellees' "waste fluid has infiltrated, invaded, flooded, contaminated, polluted, damaged and/or rendered [appellants' gas and oil reservoirs] commercially nonviable."  As a result, appellants "have experienced and continue to experience significant, continual and expanding production losses of gas and oil from the Bethel Wells, along with revenue losses derived therefrom."  Four wells in particular have become useless:  (1) Sandra 1; (2) C.E. and Mary L. Pinkerton; (3) B.P. Pinkerton #1; and (4) Pinkerton #4.

{¶9}  Appellants claimed that "[t]he sizeable and collective scope of [appellees'] ongoing waste fluid injection operations[,] and the resultant, large-scale contamination and/or pollution of Ohio's gas and oil reservoirs . . . prevent [appellants] from further development of gas and oil on their property."

{¶10}  Appellants further alleged that appellees' "waste fluid operations" "breached [appellees'] duties to [appellants], violated Ohio statutes and regulations, trespassed upon [appellants], created a nuisance for [appellants], and converted [appellants'] Property, among other adverse consequences."  Appellants asserted that appellees' actions "have caused and

continue to cause substantial and unreasonable damage to, and/or the loss of, [appellants'] Property, [appellants'] rights, and [appellants'] private use and enjoyment of their property, resulting in [appellants'] economic losses, annoyance, inconvenience, distress, discomfort, and other damages."

{¶11} The complaint set forth seven "causes of action": negligence, negligence per se, trespass, nuisance, "res ipsa loquitur," conversion, and "damages."

{¶12} With respect to their negligence claim, appellants asserted that appellees were negligent in the following respects:

   a)   by failing to adequately consider, and/or choosing to ignore, the harmful impacts of fracking waste fluid on neighboring properties and/or substrata, including but not limited to gas, oil, and potable water reservoirs contained therein;
   b)   by failing to adequately consider, and/or choosing to ignore, the harmful impacts of high-volume fracking waste fluid injection operations on neighboring properties and/ or substrata, including but not limited to gas, oil, and potable water reservoirs contained therein;
   c)   by failing to adequately investigate and/or determine, and/or choosing to ignore, the zone of harmful and/or damaging impact to neighboring properties and/or substrata from their waste fluid injection operations;
   d)   by failing to adequately investigate and/or determine, and/or choosing to ignore, appropriate locations to drill their Injection Wells to

minimize the potential for harmful or damaging impacts to neighboring properties and/or substrata;

e) by siting and/or drilling Injection Wells along fault and/or fracture lines that intersect the Injection Well deposit zones and provide communication pathways to gas, oil and groundwater reservoirs, the Bethel Wells and/or the Plaintiffs' Property;

f) by using improper drilling techniques and/or drilling materials;

g) by constructing and/or using ineffective and/or defective well casings and/or by failing to case and cement their Injection Wells to prevent exfiltrations of waste fluid outside the permissible injection zone;

h) by negligently planning, training, and/or supervising their employees, contractors, staff, and/or agents;

I) by failing to adequately monitor the volume, positioning, deposit location, accumulation, and/or containment of their waste fluid;

j) by accepting cumulative volumes of waste fluid that exceed the capacity of their Injection Wells to adequately contain waste fluid within their permitted and/or permissible injection zones;

k) by injecting and/or depositing cumulative volumes of waste fluid that exceed the capacity of their Injection Wells to adequately contain waste fluid within their permitted and/or permissible injection zones;

l) by harming the commercial viability, development potential, and/or utility of Ohio's oil and gas reservoirs;

m) by failing to construct their Injection Wells and/or well sites in a reasonable manner so as to prevent any harmful, damaging, and/or impactful invasions, releases, spills, discharges, flooding, infiltrations, migrations, intrusions, and/or deposits of fracking waste fluid into gas and oil reservoirs and/or others' property, including but not limited to Plaintiffs' Property;

n) by failing to take reasonable measures and precautions necessary to divert and/or respond to any harmful, damaging, and/or impactful invasions, releases, spills, discharges, flooding, infiltrations, migrations, intrusions, and/or deposits of waste fluid into gas and oil reservoirs and/or others' property, including but not limited to Plaintiffs' Property;

o) by failing to drill, own, and operate their Injection Wells and well sites in a manner that comports with established legal and/or industry standards for drillers, owners, and/or operators of Class Il injection wells;

p) by failing to drill, own, and/or operate their Injection Wells and well sites, in accordance with the laws, codes, statutes, and/or regulations of the State of Ohio, including, but not limited to Ohio Revised Code § 1509.22 and Ohio Administrative Code Sections 1501:9-3-03, 1501:9-3-06, 1501:9-3-07, 1501.9-3-08, and 1501:9-3-11;

q) by failing to dispose of waste fluid in a manner that prevents pollution of Ohio's natural resources and/or the Plaintiffs' Property;

r) by creating unreasonable risks to Ohio's gas, oil, other mineral, and groundwater resources;

s) by failing to drill, develop, and/or construct Injection Wells of sufficient capacity to contain and prevent any harmful, damaging, and/or impactful invasions, releases, spills, discharges, flooding, infiltrations, migrations, intrusions, and/or deposits of fracking waste fluid into gas and oil reservoirs and/or others' property, including but not limited to Plaintiffs' Property;

t) by unnecessarily dissipating and/or damaging Ohio's oil and gas reservoir energy;

u) by inefficiently, excessively, and/ or improperly storing waste fluid;

v) by locating, drilling, equipping, and/or operating their Injection Wells in a manner that reduces or tends to reduce the quantity of oil or gas

ultimately recoverable under prudent and proper operations from Ohio's oil and gas reservoirs;

w) by locating, drilling, equipping, operating, or producing their Injection Wells in a manner that causes or tends to cause unnecessary or excessive destruction of gas and oil resources;

x) by invading the Plaintiffs' subsurface property in a manner that actually interferes with Plaintiffs' reasonable and foreseeable use of the subsurface and their Property;

y) by physically damaging and interfering with the use of Plaintiffs Property;

z) by placing, discharging, and/or causing to be placed and/or discharged in the Plaintiffs' Property waste fluid that causes or could reasonably be anticipated to cause damage or injury to the environment;

aa) by causing or allowing, the movement and/or migration of waste fluid in a manner, and into underground formations, other than as approved and/or authorized by the Ohio division of oil and gas;

bb) by causing and/or allowing waste fluid to migrate out of its injection zone;

cc) by causing and/or allowing waste fluid to migrate into impermissible underground formations not approved for injection of waste fluid;

dd) by placing or causing to be placed in the land waste fluid that causes or could reasonably be anticipated to cause damage or injury to public health, public safety, and/or the environment;

ee) by exceeding maximum allowable injection pressures;

ff) by injecting waste fluid into productive and/or developable gas and oil reservoirs; and/or

gg) in other potentially actionable ways.

{¶13} Appellants claimed that appellees' negligence "caused waste fluid and/or other harmful contamination to enter into and significantly and/or irreparably or permanently impair and

damage the quality and commercial viability of gas and oil reservoirs, the [appellants'] Property, and the Bethel Wells." They further alleged that appellees' "acts and/or omissions referenced herein were, and continue to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶14} Appellants additionally asserted that appellees were negligent per se by failing to comply with Ohio statutes and regulations regarding the protection of gas, oil, and groundwater reservoirs. They asserted that appellees' negligence per se is "a direct and proximate cause of waste fluid and/or other harmful contaminants entering into and significantly and/or irreparably or permanently impairing and damaging the quality and commercial viability of gas and oil reservoirs, [appellants'] Property, and the Bethel Wells."

{¶15} For their trespass claim, appellants alleged that appellees' conduct has "caused waste fluid to physically invade, intrude, interfere with, and/or unlawfully enter upon, and cause substantial damage to, [appellants'] Property without authority, privilege, invitation, inducement and/or [appellants'] permission."

13

{¶16}  With respect to their nuisance claim, appellants asserted that appellees' actions "have restricted and infringed upon [appellants'] use and enjoyment of the Property, creating a qualified nuisance for [appellants]."  They alleged that appellees'

> Injection Well operations have imposed a nuisance upon [appellants] in the form of financial, environmental, and emotional hardship inasmuch as [appellees'] Injection Well operations have overtaken and damaged gas and oil production on [appellants'] Property with a toxic substance that is regulated under Ohio law to prevent human and environmental contact, thereby exposing [appellants'] Property . . . to additional regulatory requirements where said requirements would otherwise not have been imposed.

{¶17}  Appellants claimed that the damage to their property "is reasonably believed to be permanent" and that their property "is believed to be incapable of being restored."  Appellants further alleged that appellees' conduct "in creating this nuisance [was], and continue[s] to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶18}  Appellants' complaint also alleged that under the doctrine of res ipsa loquitur, "it can be readily inferred . . . that [appellees] have been and continue to be negligent in their waste fluid injection and/or Injection Well operations."

14

Appellants further asserted that appellees' "negligent waste fluid injection operations were, and continue to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶19} Regarding their conversion claim, appellants alleged that appellees have converted appellants' property by transforming it from "commercially viable and productive gas and oil reservoirs and operating gas and oil wells into [appellees'] own repositories for [appellees'] injection, storage, accumulation, and/or disposal of their waste fluid." Appellants also asserted that appellees'

> conduct in their waste fluid injection operations has interfered with [appellants'] dominion and/or control over the Bethel Wells and [appellants'] chattel property used in connection with the operation of the Bethel Wells and located upon [appellants'] Property in a manner that is wrongful and inconsistent with, interferes with, and/or denies and/or excludes, and is damaging to, [appellants'] rights, resources, and abilities to commercially produce and/or develop, and/or lease the right to develop, gas and oil in Washington County, Ohio and/or Athens County, Ohio, and/or otherwise benefit from their Property.

{¶20} Appellants claimed that appellees' "wrongful acts . . . constitute a conversion of [appellants'] Property that has interfered with and damaged [appellants'] rights, resources, and

abilities to commercially produce and/or develop, and/or lease the right to develop, gas and oil." They contended that appellees' conduct "has been so great as to be akin to the imposition of a 'forced judicial sale' and requires [appellees] to pay the full value of the [appellants'] Property with which they have interfered." Appellants also alleged that appellees' conversion is a "direct and proximate cause" of their damages.

**{¶21}** Appellants next set forth the damages that they have suffered "[a]s a direct and proximate result of [appellees'] aforementioned acts and/or omissions." More particularly, appellants alleged that they have sustained the following damages: (1) "the loss of value of" their property; (2) "the loss of use and enjoyment of" their property; (3) "inconvenience and discomfort caused by interference with the peaceful possession and enjoyment of" their property; (4) "the loss of physical gas and oil and/or gas and oil production"; (5) "the loss of business revenue"; (6) "the loss of sunk operating costs"; (7) "interference with and/or the loss of the absolute and exclusive rights to produce, lease, and/or sublease the right to produce gas and oil on their Property"; (8) "the violation of [appellants'] rights to access, develop and rely

upon untainted gas and oil reservoirs of the state as guaranteed by the Ohio Constitution and laws of the State of Ohio"; (9) "harm to [appellants'] business operations and/or relationships with [appellants'] lessors"; (10) "interference with and/or damage to [appellants'] leaseholds"; (11) "interference with [appellants'] private use and enjoyment of their land and/or Property"; (12) "harm to and/or the loss of use of [appellants'] business equipment"; (13) "costs incurred to attempt to investigate, repair and/or mitigate, and/or clean up the damage to" their property; (14) "loss of confidence in the quality of [their property] for commercial gas and oil development"; (15) "inconvenience, distress, anxiety, and/or emotional and mental anguish"; (16) "discomfort and annoyance related to the loss of use and/or loss of enjoyment and/or contamination of the Property; and/or"; (17) "loss of the quality of life [appellants] otherwise enjoyed."

**{¶22}** Appellants also alleged that appellees' conduct warrants punitive damages. They asked the court to find appellees "jointly and severally" liable.

17

{¶23} Appellants later dismissed their claims against Fountain Quail Drilling, LLC. The 15 remaining defendants[2] filed Civ.R. 12(B)(6) motions to dismiss appellants' complaint for failure to state a claim upon which relief can be granted. These defendants essentially asserted that appellants' complaint failed to allege operative facts that connected each defendant to appellants' injuries and failed to give the defendants sufficient notice of the claims raised against them. Although each defendant framed the argument in a slightly different manner, they all raised some variation of the argument that appellants' complaint does not contain sufficient facts to give them notice of "the basic 'who', 'what', 'when', and 'where' so that [the defendants] may know at least the bare minimum about the claims against them." Redbird's Motion to Dismiss at 8.

{¶24} Some of the defendants also argued that appellants' complaint failed to show that the defendants' conduct proximately caused appellants' injuries. For example, Tallgrass

_____

[2] We observe that not all of the defendants who filed motions to dismiss are involved in this appeal. On March 1, 2023, the trial court granted Reliable Enterprises, Inc.'s (Reliable) counsel's motion to withdraw. Reliable has not entered an appearance in this appeal.

argued that appellants "fail[ed] to meet their burden for showing Tallgrass proximately caused the harm described in the Complaint."

{¶25} The defendants further argued that appellants' conversion claim failed to state a claim upon which relief could be granted because it did not allege that any defendant had converted appellants' personal property, but instead, alleged only that the defendants had converted appellants' mineral estate, which the defendants asserted is real property.

{¶26} The defendants also contended that appellants' "res ipsa loquitur" claim fails to state a claim upon which relief could be granted. They asserted that res ipsa loquitur is an evidentiary rule, not an independent cause of action.

{¶27} The defendants additionally asked the court to dismiss appellants' "claim" for emotional damages. They asserted that Bethel is a business entity that cannot recover emotional damages.

{¶28} Tallgrass and JDDC further argued that appellants' nuisance claim fails to state a claim upon which relief can be granted. They contended that to state a nuisance claim, appellants must allege that they suffered physical discomfort,

19

but their complaint only seeks damages for their loss of use and enjoyment of their property.  Tallgrass and JDDC thus asked the court to dismiss appellants' nuisance claim.

{¶29}  The trial court granted the defendants' motions to dismiss.  The court agreed with the defendants that appellants' complaint failed to allege sufficient facts to give the defendants notice of the claims against them.  The court also agreed with the defendants that appellants' complaint failed to allege "what property [the defendants] have damaged, when the property was damaged, who actually damaged what property," and "whether the property damaged was held in fee simple or were leased mineral rights."[3]

{¶30}  On January 31, 2023, appellants filed a motion for leave to amend their complaint and submitted a 63-page proposed amended complaint that intended to address the purported ills of which the defendants had claimed appellants' initial complaint suffered.

{¶31}  On March 13, 2023, the trial court denied appellants' motion to amend their complaint.  The court found that the

---

[3] We have included additional details regarding the motion-to-dismiss proceedings in an appendix to this opinion.

proposed amended complaint failed to give appellees "notice as to which [d]efendant did what to which well" and does "not identify the specific property rights that have been harmed by which [d]efendant." The court stated that the proposed amended complaint "again fails to answer the who, what, when, where[,] and how questions required by Civil Rule 8."[4] The court determined that the amended complaint did not remedy the purported defects appellees identified in their motions to dismiss. The court thus concluded that the proposed amendment would be futile and the court denied appellants' motion to amend the complaint. This appeal followed.

I

**{¶32}** In their first assignment of error, appellants assert that the trial court erred by dismissing their complaint. Appellants contend that when the trial court evaluated whether appellants' complaint fails to state a claim upon which relief

---

[4] We observe that some of the appellees referred the trial court to other Ohio appellate decisions that ostensibly endorse the "plausibility" standard that the United States Supreme Court adopted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As we note in a later part of this opinion, however, the Ohio Supreme Court has not adopted this "plausibility" standard.

can be granted, the court imposed a heightened pleading standard that does not exist in Ohio.  Appellants assert that under Ohio's liberal, notice-pleading standard, their complaint does not fail to state a claim upon which relief can be granted. They argue that the complaint gives appellees adequate notice of appellants' claims and that, contrary to appellees' innuendos, they need not support their claims at that juncture with evidence or scientific proof.

{¶33}  Appellees counter that appellants' complaint fails to satisfy Ohio's notice-pleading standard.  While each appellee offers slightly different reasons why appellants' complaint fails this standard, they essentially argue that appellants' complaint (1) is nothing but utter speculation, and (2) fails to allege the "operative facts" that give rise to the claims for relief.  Appellees also repeat the argument that they raised below-that the complaint fails to provide appellees "with the basic 'who', 'what', 'when', and 'where' so that [appellees] may know at least the bare minimum about the claims against them."[5] Redbird's Brief at 10.

---

[5] We have included more specifics regarding the parties' arguments in the appendix to this opinion.

{¶34} JDDC takes the argument one step further and asserts that appellants' complaint does not "*credibly* allege that the large-volume, high pressure waste fluid injection operations of Appellees J.D. Drilling Company and James E. Diddle collectively caused flooding damage to the development of Plaintiff's mineral estate." (Emphasis added.) We summarily dismiss this argument from the start because it directly conflicts with Ohio law, which, as stated below, requires courts to presume that all factual allegations contained in the complaint are true. The credibility of the allegations is not a proper consideration at the motion-to-dismiss stage.

STANDARD OF REVIEW

{¶35} "Appellate courts conduct a de novo review of trial court decisions that grant or deny a Civ.R. 12(B)(6) motion to dismiss."[6] *Student Doe v. Adkins*, 2021-Ohio-3389, ¶ 17 (4th Dist.), citing *Alexander Local School Dist. Bd. of Edn. v.*

---

[6] Diversified asserts that the abuse-of-discretion standard of review applies because appellants have asked this court to reverse the trial court's decision that overruled their motion to amend their complaint. Appellants also ask this court to reverse the trial court's decision that granted appellees' motions to dismiss, however. The proper standard of review for this issue is the de novo standard of review.

*Village of Albany*, 2017-Ohio-8704, ¶ 22 (4th Dist.); *e.g., Valentine v. Cedar Fair, L.P.*, 2022-Ohio-3710, ¶ 12, citing *Alford v. Collins-McGregor Operating Co.*, 2018-Ohio-8, ¶ 10. We therefore afford no deference to the trial court's decision, but instead, independently review the trial court's decision. *Struckman v. Bd. of Edn. of Teays Valley Local School Dist.*, 2017-Ohio-1177, ¶ 18 (4th Dist.).

MOTION-TO-DISMISS STANDARD

**{¶36}** Civ.R. 12(B)(6) allows a party to file a motion to dismiss a complaint for failing to state a claim upon which relief can be granted. "[A] Civ.R. 12(B)(6) motion to dismiss tests only the sufficiency of the allegations." *Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 9, citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger,* 42 Ohio St.3d 116, 117 (1989); *accord State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,* 65 Ohio St.3d 545, 548 (1992) (explaining that a Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint). A court that is considering a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted must presume that all factual allegations contained in the complaint are true and must

construe all reasonable inferences in favor of the nonmoving party. *E.g., Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 2006-Ohio-942, ¶ 3, fn.1, citing *Maitland v. Ford Motor Co.*, 2004-Ohio-5717, ¶ 16; *Perez v. Cleveland,* 66 Ohio St.3d 397, 399 (1993). Consequently, a trial court may not grant a motion to dismiss for failure to state a claim simply because the court "doubts the plaintiff will prevail." *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 8 (2nd Dist.); *accord Barton v. Cty. of Cuyahoga,* 2017-Ohio-7171, ¶ 18 (8th Dist.). Instead, "Rule 12(B)(6) motions should be granted only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover." *Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179, 185-186 (8th Dist.1974); *accord State Auto. Mut. Ins. Co. v. Titanium Metals Corp.*, 2006-Ohio-1713, ¶ 8 (stating that "a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory"). In other words, a trial court may grant a motion to dismiss for failure to state a claim only if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants*

*Union,* 42 Ohio St.2d 242 (1975), syllabus; *e.g., LeRoy v. Allen, Yurasek & Merklin,* 2007-Ohio-3608, ¶ 14; *Maitland v. Ford Motor Co.,* 2004-Ohio-5717, ¶ 11; *York v. Ohio State Highway Patrol,* 60 Ohio St.3d 143, 144 (1991); *see also State ex rel. Ware v. Booth*, 2024-Ohio-2102, ¶ 4 (motion for judgment on the pleadings does not permit courts to weigh the evidence, and thus, even though the relator's "account seem[ed] farfetched," motion for judgment on the pleadings was not warranted).

{¶37} "This standard is consistent with Civ.R. 8(A), which provides for notice pleading and requires only (1) 'a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled.'" *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549 (1992); *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 9-10 (1985) (citation omitted) ("The purpose of [Civ.R. 8(A)] is to notify the defendant of the legal claim against him."). Importantly, Ohio remains "a notice-pleading state." *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 7, citing *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13; *accord Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶

10. Moreover, the Ohio Supreme Court has not adopted "the heightened federal pleading standard" arguably endorsed in *Twombly* and *Iqbal*. *State ex rel. Ware v. Booth*, 2024-Ohio-2102, ¶5, fn. 1.

{¶38} Accordingly, "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 29. Instead, "only in a few circumscribed types of cases, such as a workplace intentional tort or a negligent-hiring claim against a religious institution," must a "plaintiff plead operative facts with particularity." *Id.* at ¶ 29, fn.5, citing *York*, 60 Ohio St.3d at 145; *see Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190 (1988) (employee's intentional tort claim against employer) and *Byrd v. Faber*, 57 Ohio St.3d 56 (1991) (negligent hiring claim against religious institution); *see also* S.Ct.Prac.R. 12.02(B)(1) (complaints in original actions filed in the Supreme Court); Civ.R. 9(B) (claims of fraud or mistake). Any further "exceptions to the pleading requirement of the Civil Rules, which were adopted by the Supreme Court [of Ohio] to specify the types of pleadings that are appropriate, should be made by the

Supreme Court only and not by lower courts." McCormac, *Ohio Civil Rules Practice* 98, § 5.02 (3d Ed. 2003).

{¶39} Thus, outside the limited types of cases identified above, Civ.R. 8(A) simply requires "a short and plain statement of the claim" and a demand for relief. *See Black's Law Dictionary* (12th ed. 2024) (defining "notice pleading" as "[a] procedural system requiring that the pleader give only a short and plain statement of the claim showing that the pleader is entitled to relief, and not a complete detailing of all the facts"). A complaint is not, therefore, "fatally defective and subject to dismissal" simply because it does not set forth each element of a cause of action "with crystalline specificity." *Border City Sav. & Loan Assn. v. Moan*, 15 Ohio St.3d 65, 66 (1984).

{¶40} We further observe that Civ.R. 84 specifically states that the forms contained in the Appendix of Forms to the Ohio Civil Rules "shall be accepted for filing by courts of this state." Civ.R. 84 also specifies that those forms illustrate "the simplicity and brevity of statement which these rules contemplate." One of the forms included in the appendix is a "[c]omplaint for negligence where plaintiff is unable to

determine definitely whether the person responsible is C.D. or E.F. or whether both are responsible and where his evidence may justify a finding of wilfulness or of recklessness or of negligence." Civ.R. Form 9. This form reads in its entirety as follows:

> 1. On _____, 19___, in a public highway called _____ Street in _____, Ohio, defendant C.D. or defendant E.F., or both defendants C.D. and E.F. wilfully or recklessly or negligently drove or caused to be driven a motor vehicle against plaintiff who was then crossing said highway.
>
> 2. As a result plaintiff was thrown down and had his leg broken and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.
>
> WHEREFORE plaintiff demands judgment against C.D. or against E.F. or against both in the sum of _____ dollars and costs.

*Id.* This form thus reveals that contrary to appellees' repeated assertions throughout the proceedings, Ohio's liberal, notice-pleading rules do not (outside of the very limited exceptions that do not apply here) require facts to be alleged with particularity. *See generally Maternal Grandmother*, 2021-Ohio-4096, at ¶ 11 ("when a complaint invokes the exception to a government employee's immunity under R.C. 2744.03(A)(6)(b), notice pleading suffices and the plaintiff may not be held to a

heightened pleading standard or expected to plead the factual circumstances surrounding an allegation of wanton or reckless behavior with particularity"); *Coryell v. Bank One Tr. Co. N.A.*, 2004-Ohio-723, ¶ 25 ("a plaintiff may plead a prima facie case of age discrimination by pleading 'a short and plain statement of the claim showing that the party is entitled to relief.' Civ.R. 8(A)(1)."); *Beretta*, 2002-Ohio-2480, at ¶ 29 (the complaint complied with notice-pleading standard when "it alleged that appellees had manufactured or supplied defective guns without appropriate safety features"; the complaint need not "allege with specificity that particular guns were defective and as a result caused particular injuries"); *York*, 60 Ohio St.3d at 144–45 ("In her complaint, the appellee alleged that although the decedent was not disturbing the peace or violating the law, the officers pursued him 'negligently, needlessly, willfully and maliciously,' and used excessive force to engage in a high speed chase with him.  On the basis of this claim, we cannot conclude that there is no set of facts which would entitle the appellee to recover from the state."); *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 10 (1985) ("a complaint filed by an employee against an employer states a claim for relief for

retaliatory discharge when it alleges that the employee was injured on the job, filed a claim for workers' compensation and was discharged by that employer in contravention of R.C. 4123.90"); *Border City Sav. & Loan*, 15 Ohio St.3d at 66 ("It will be incumbent upon appellant to establish that these lawsuits were instituted maliciously, without probable cause, and, as a general rule, were terminated in appellant's favor. Nonetheless, it does not render appellant's complaint fatally defective and subject to dismissal that each element of its cause of action was not set forth in the complaint with crystalline specificity.").

**{¶41}** "Thus, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, a pleader is ordinarily not required to allege in the complaint every fact he or she intends to prove . . ." *State ex rel. Hanson*, 65 Ohio St.3d at 549, citing *York*, 60 Ohio St.3d at 144-145; *see York*, 60 Ohio St.3d at 146 (Moyer, J., concurring) (stating that complaint need not contain more than "brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule"); *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 180 (1984) ("No longer must a

complaint set forth specific factual allegations."); *see also* Civ.R. 8(E) (averments contained in a pleading "shall be simple, concise, and direct"). A complaint must, however, "'contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Schlenker Ents., L.P. v. Reese*, 2010-Ohio-5308, ¶29 (3d Dist.), quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist. 1982). "Consequently, 'as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Beretta*, 2002-Ohio-2480, at ¶ 29, quoting *York*, 60 Ohio St.3d at 145.

{¶42} Moreover, a plaintiff is "not required to plead the legal theory" of the case at the pleading stage. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526 (1994). Instead, the complaint "need only give reasonable notice of the claim." *State ex rel. Harris v. Toledo*, 74 Ohio St.3d 36, 37 (1995). Furthermore, "a plaintiff is not required to prove his or her case at the pleading stage." *York*, 60 Ohio St.3d at 144-145. And notably, "Civ.R. 8(A) does not contemplate evidentiary pleading." *Collins v. National City Bank*, 2003-Ohio-6893, ¶ 58

(2d Dist.). Indeed, "[v]ery often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession." *York*, 60 Ohio St.3d at 145; *accord State ex rel. Hanson*, 65 Ohio St.3d at 549 (citing *York* and noting that the facts necessary to prove claims alleged in a complaint "may not be available until after discovery").

> Moreover, Civ.R. 8(F) provides that courts should construe the pleadings so as to do substantial justice. The object is not absolute technical conformity with arcane rules of pleading but rather simply to see whether the plaintiffs' wording provides the defendants with notice of the claim and the opportunity to defend it.

*Ogle v. Ohio Power Co.*, 2008-Ohio-7042, ¶ 9 (4th Dist.) (concluding "that delving into the nuances of absolute versus qualified nuisance should be reserved for discovery and summary judgment").

{¶43} The foregoing "simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define disputed facts and to dispose of nonmeritorious claims." *Id.* at ¶ 5 (4th Dist.); McCormac at 222, § 10.01 ("discovery, rather than pleadings, is used to clarify and narrow the issues"). In fact, "'[b]ecause it is so easy for the

pleader to satisfy the standard of Civ.R. 8(A), few complaints are subject to dismissal.'" *Ogle*, 2008-Ohio-7042, at ¶ 5 (4th Dist.), quoting *Leichtman v. WLW Jacor Communications, Inc.*, 92 Ohio App.3d 232, 234 (1st Dist. 1994). Additionally, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 10 (1985) (citations omitted). Consequently, Civ.R. 12(B)(6) dismissals are "reserved for the rare case that cannot possibly succeed." *Tri-State Computer Exchange, Inc. v. Burt*, 2003-Ohio-3197, ¶ 12 (1st Dist.).

**{¶44}** Furthermore, a court that is reviewing a Civ.R. 12(B)(6) motion to dismiss "cannot rely on evidence or allegations outside the complaint." *State ex rel. Fuqua v. Alexander,* 79 Ohio St.3d 206, 207 (1997); *accord Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 11 ("the movant may not rely on allegations or evidence outside the complaint; such matters must be excluded, or the motion must be treated as a motion for summary judgment"). However, "[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." (Citations omitted.) *State ex rel. Crabtree v.*

*Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, fn. 1 (1997). Thus, a court may consider written instruments attached to a complaint when ruling on a Civ.R. 12(B)(6) motion to dismiss. *Cooper v. Highland Cty. Bd. Of Commrs.*, 2002-Ohio-2353, ¶ 9 (4th Dist.); *see also* Civ.R. 10(D) ("When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading.").

{¶45} In the case sub judice, we recognize that appellees presented the trial court with quotations from cases that appear to impose a heightened pleading standard. As we stated above, however, the Ohio Supreme Court has not endorsed a heightened pleading standard, except in very limited types of cases, none of which is relevant here. Moreover, the appendix of forms contained in the Ohio Rules of Civil Procedure indicate that a complaint need not contain detailed factual allegations, as appellees persistently have argued.

{¶46} Furthermore, appellees cite no Ohio case law that demands a complaint answer the who, what, when, where, and how questions that they claim Civ.R. 8(A) requires. That standard the appellees desire to be applied appears to have originated in

federal court cases that apply a heightened pleading standard in fraud cases. *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1051 (8th Cir. 2024), quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) ("'[A]llegations of fraud . . . [must] be pleaded with particularity. In other words, [Federal] Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'"); *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873, (11th Cir. 2023) ("a plaintiff needs to plead the who, what, when, where, and how regarding a claim only when Rule 9(b)'s heightened pleading standard applies"); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006), quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal quotation marks omitted) ("Rule 9(b) requires parties bringing a claim for fraud or fraudulent concealment to specify the 'who, what, when, where, and how of the alleged fraud.'").

**{¶47}** We recognize that the case at bar involves Ohio's Civil Rules of Procedure, not the Federal Rules of Civil Procedure, and it does not involve fraud. Thus, appellees' assertions that appellants must plead particulars regarding the

who, what, when, where, and how to satisfy Ohio's notice-pleading standard is without merit. *See Pugh v. Sloan*, 2019-Ohio-3615, ¶ 40 (11th Dist.) ("Civ. R. 8 does not require" a complaint to allege "what was allegedly stolen or slandered, when it was stolen or slandered, and by whom"); *see generally Ogle*, 2008-Ohio-7042, at ¶ 9 (4th Dist.) (Civ.R. 8(A) "dictates" when deciding whether a complaint gives fair notice so as to survive a motion to dismiss for failure to state a claim and courts need not parse "the complaint to see whether the plaintiffs have pleaded operative facts going to each element of the claim" or "delv[e] into the nuances" of each claim; instead, those details "should be reserved for discovery and summary judgment").

**{¶48}** As we explain below, applying the correct, notice-pleading standard to appellants' complaint shows that appellant's complaint satisfies this standard. Therefore, we believe that the trial court incorrectly dismissed appellants' complaint.

## EVIDENCE OUTSIDE OF THE COMPLAINT

**{¶49}** Before we review whether appellants' complaint fails to state a claim upon which relief can be granted, we first

consider some of the appellees' arguments that we may consider evidence outside of the complaint, such as the ODNR report and the precise location of the parties' wells. Tallgrass argued that the trial court could consider the ODNR report because appellants' complaint "effectively incorporate[d]" it by "repeatedly rely[ing] on it to bring their claims." Some of the appellees further argue that we may take judicial notice of the location of the wells identified in the complaint by examining maps obtained from the ODNR website.

{¶50} We do not agree that we may consider the ODNR report when we consider whether appellants' complaint fails to state a claim upon which relief can be granted. Appellants did not attach a copy of the ODNR report to their complaint. Moreover, unlike actions founded on an account or a written instrument, which require a party to attach a copy of the account or written instrument to the pleading, Civ.R. 10(D)(1), appellants' tort complaint is not founded upon an account or written instrument. Moreover, appellants' tort claims are not medical, dental, optometric, or chiropractic claims that require an affidavit of merit to accompany the complaint. *See* Civ.R. 10(D)(2). Appellants' tort claims do not otherwise fall within any other

exception that would require the complaint to allege the existence of a written report, like the ODNR report, that arguably may support their tort claims. *See generally Estate of Hand by & through Hand v. Florida Dept. of Corr.*, 2023 WL 119426, *8 (11th Cir. Jan. 6, 2023) ("a plaintiff is not required to put expert testimony within a complaint itself—that would raise the pleading standard well-beyond what is required"). Additionally, requiring a party to attach evidence that may support claims for relief that do not fall within one of the Civ.R. 10(D) exceptions is contrary to Ohio's liberal, notice-pleading standard. *See Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13 ("To require a plaintiff to attach proof of standing to a foreclosure complaint would also run afoul of Ohio's notice-pleading requirements."). For this reason, we do not believe that the complaint's reference to the ODNR report must result in the conclusion that the complaint incorporated the entire ODNR report and that we may consider it when determining whether appellants' complaint states a claim upon which relief can be granted.

**{¶51}** Even if, for purposes of argument, we were to consider the entire ODNR report, we observe that a Civ.R. 12(B)(6)

dismissal based upon a written instrument "is proper only when the language used in the written instrument is clear and unambiguous and creates 'an insuperable bar to relief.'" *Alexander Local School Dist.*, 2017-Ohio-8704, at ¶ 26 (4th Dist.), quoting *Slife*, 40 Ohio App.2d at 186. The ODNR report does not create an insuperable bar to relief. It does not show that it is impossible that injection wells other than the Redbird #4 injection well may have contaminated appellants' mineral estate.

{¶52} Regarding appellees' assertion that we may take judicial notice of the location of the parties' wells, even if we were to take judicial notice of the location of the wells, whether waste fluid from an injection well located miles away or in a different county, for instance, may have contaminated appellants' property is a factual question not suited for determination upon a motion to dismiss. We again note that appellants need not prove their case in their complaint.

STANDING

{¶53} Appellants also argue that the trial court incorrectly dismissed their complaint for lack of standing. Appellants assert that the complaint contains sufficient allegations to

notify appellees that appellants claim a joint property interest in the damaged property.

{¶54} Appellees Redbird and JDDC argue that appellants' complaint fails to establish that appellants have standing to seek relief against Redbird and JDDC. Redbird contends that appellants lack standing because they "failed to plead an actual injury" by failing "to provide any meaningful description or identification of the property that was allegedly damaged." Redbird further asserts that the complaint does not "sufficiently allege that any of the [a]ppellants own the underlying mineral interests that [a]ppellees allegedly damaged."

{¶55} JDDC claims that appellants lack standing because they "did not allege that any specific injury was fairly traceable to any unlawful conduct by" JDDC. JDDC also contends that the complaint fails "to identify who owns the mineral rights that have been damaged in order to establish who has standing to sue" and does not identify "any possible claim" that Ms. Lane "may have."

{¶56} "Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish

standing to sue." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 2007-Ohio-5024, ¶ 27. The essential question "is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Racing Guild of Ohio, Local 304 v. Ohio State Racing Comm.,* 28 Ohio St.3d 317, 321 (1986), quoting *Baker v. Carr,* 369 U.S. 186, 204 (1962). "Under traditional standing principles, a plaintiff must show, at a minimum, that he has suffered "'(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.'" *State ex rel. Walgate v. Kasich*, 2016-Ohio-1176, ¶ 18, quoting *ProgressOhio.org*, 2014-Ohio-2382, at ¶ 7, quoting *Moore v. Middletown,* 2012-Ohio-3897, ¶ 22.

{¶57} At the pleading stage, a plaintiff "is 'not required to establish its standing beyond the allegations of the [c]omplaint.'" *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13, quoting *Chase Home Fin., L.L.C. v. Mentschukoff*, 2014-Ohio-

5469, ¶ 20 (11th Dist.). A complaint sufficiently establishes a plaintiff's standing when it alleges "enough general facts to show that injury resulted from the defendant's conduct, because when deciding a motion to dismiss, a court will presume 'that general allegations embrace those specific facts that are necessary to support a claim.'" *Sacksteder v. Senney*, 2012-Ohio-4452, ¶ 62 (2nd Dist.), quoting *S. Christian Leadership Conference v. Combined Health Dist.*, 2010-Ohio-6550, ¶ 17 (2d Dist.); *accord State ex rel. Walgate*, 2016-Ohio-1176, at ¶ 47, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("we presume that general allegations embrace the specific facts necessary to support a claim").

{¶58} In the case sub judice, we believe that appellants' complaint sets forth sufficient general facts to show that injury resulted from Redbird's and JDDC's conduct. The complaint identifies the injury as appellants' damaged mineral estate. The complaint fairly traces Redbird's and JDDC's conduct to that injury by alleging that Redbird and JDDC inject toxic waste into injection wells located near appellants' property. Appellants' complaint lists multiple duties that each appellee allegedly breached and alleges that, as a result of

43

those breaches, appellants suffered injuries. These claims sufficiently allege that appellants' injuries are fairly traceable to Redbird's and JDDC's purported unlawful conduct. We again emphasize, however, that at the pleading stage, appellants need not definitively prove that Redbird's and JDDC's conduct actually caused appellants' injury, or scientifically detail how their conduct caused appellants' injury.

{¶59} Furthermore, we believe that the complaint alleges sufficient facts to show that each appellant has a personal stake in the outcome of the controversy. Appellants allege that Redbird's and JDDC's conduct damaged appellants' property in which appellants share a common interest. The complaint identifies appellants' property, in part, as follows: (1) an "absolute and exclusive ownership interest in the right to drill, develop, and produce the gas and oil reservoirs, covering approximately 1,471 acres in Washington County, Ohio and 2,317 acres in Athens County, Ohio, along with an ownership interest in the equipment, business infrastructure, and manpower to commercially develop gas and oil"; (2) an "absolute and exclusive mineral ownership interests give [appellants] the rights to drill, develop, produce, remove, commercialize, and/or

44

sell gas and oil, among other rights"; and (3) an "absolute and exclusive ownership interests also give [appellants] the rights to lease and/or sublease their rights to drill, develop, produce, remove commercialize, and/or sell gas and oil."

{¶60} These allegations provide Redbird notice "of the property that was allegedly damaged" and adequately alleges that "[a]ppellants own the underlying mineral interests that [a]ppellees allegedly damaged." And, contrary to JDDC's argument, this allegation also identifies "who owns the mineral rights that have been damaged in order to establish who has standing to sue." The complaint alleges that appellants collectively own "the right to drill, develop, and produce the gas and oil reservoirs" located beneath their property.

{¶61} Consequently, we believe that Redbird's and JDDC's standing arguments are without merit. The trial court thus erred by dismissing appellants' complaint for lack of standing.

CAUSATION

{¶62} Appellants next assert that the trial court erred by determining that the complaint fails to adequately allege that appellees' conduct was the proximate cause of appellants' injury. They contend that the court wrongly required them "to

45

establish, or even notice, proximate cause regarding which defendants damaged which wells, or when and how they did it, as a prerequisite to discover an actionable claim for damage to development of the mineral estate as a whole." Appellants argue that the trial court's finding is contrary to the complaints' "allegations that the entirety of the enumerated mineral acreage can no longer be developed, commercialized, or liquidated as a consequence of the defendants' collective, regional flooding of the subsurface." They further claim that the trial court improperly imposed an evidentiary-pleading standard rather than a notice-pleading standard.

{¶63} Appellees Redbird, Tallgrass, and JDDC contend that appellants' complaint fails to sufficiently allege proximate cause because the complaint does not contain specific facts to connect each appellee's operations to appellants' damages.[7]

---

[7] Proximate cause is one element of the causes of action contained in appellants' complaint. *See Hester v. Dwivedi*, 89 Ohio St.3d 575, 583 (2000) ("The law of negligence does not hold a defendant liable for damages that the defendant did not cause."); *Misseldine v. Corporate Investigative Serv., Inc.*, 2003-Ohio-2740, ¶ 31 (8th Dist.) ("the plaintiff must prove that the trespass proximately caused that for which compensation is sought and the amount of those damages"); *Gaines v. Village of Wyoming*, 147 Ohio St. 491, 498 (1947) ("It must also be shown by

{¶64}  The proximate-cause rule limits "'legal responsibility . . . to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.'"  *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St. 3d 49, 57 (1989), quoting Prosser & Keeton at 264.  "Proximate causation has been described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'"  *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 618 (1995), quoting Prosser & Keeton, *The Law of Torts* 263, Section 41 (5 Ed.1984).  An act is a proximate cause of an injury when the injury sustained is "'"the natural and probable consequence of the"'" act.  *Jeffers v. Olexo*, 43 Ohio St.3d 140, 143 (1989), quoting *Ross v. Nutt*, 177 Ohio St. 113, 114 (1964), quoting *Miller v. Baltimore & Ohio Southwestern RR. Co.*, 78 Ohio St. 309, 325 (1908); *see also Strother v. Hutchinson*, 67 Ohio St.2d 282, 287 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 216, 222 (1957) ("'[W]here an original act is wrongful or negligent

---

the evidence that the injury incurred was the proximate result of the maintenance of such nuisance.").

and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established . . . '")

{¶65} "Probable," as used in the proximate-cause rule, does not mean "'more likely than not.'" *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 340 (1934); *see also Black's* (defining "probable" to mean "[l]ikely to exist, be true, or happen"). Instead, in the proximate-cause context, "probable" means "'not unlikely,' or 'such a chance of harm as would induce a prudent man not to run the risk; such a chance of harmful result that a prudent man would foresee an appreciable risk that some harm would happen.'" *Gedeon*, 128 Ohio St. at 340-41, quoting Smith, *Legal Cause in Actions of Tort*, 25 Harv.L.Rev. 103, 116 (1911)

{¶66} Moreover, "[t]here may be more than one proximate cause of an injury." *Taylor v. Webster*, 12 Ohio St.2d 53, 57 (1967). Thus, a tortfeasor is not relieved from liability simply because "some other act unites with the original act to cause injury." *Clinger*, 166 Ohio St. at 223; *see generally Queen City Terminals*, 73 Ohio St.3d at 617, citing *Pang v. Minch*, 53 Ohio St.3d 186 (1990) ("the 'substantial factor' test is used to determine liability when factors other than the

48

negligence of the tortfeasor may have caused the plaintiff's damages.")

{¶67} Ordinarily, proximate cause is a question of fact for a jury. *Strother*, 67 Ohio St.2d at 288 (1981), citing *Clinger*, 166 Ohio St. at 223; *accord Ornella v. Robertson*, 14 Ohio St.2d 144, 151 (1968) ("It is because what constitutes a 'natural and continuous sequence' is insusceptible of determination other than in the context of a particular case that the issue of proximate cause is ordinarily one for determination by the jury."). Consequently, "the analysis of proximate cause and damages [is] 'not a matter of proof at the pleading stage; it is a matter for trial or, perhaps, for summary judgment if the facts are undisputed.'" *Resor v. Dicke*, 2023-Ohio-4087, ¶ 28 (3d Dist.), quoting *Sacksteder,* 2012-Ohio-4452, at ¶ 57 (2nd Dist.).

{¶68} In the case at bar, we believe that appellants' complaint sufficiently alleges that their injury is the natural and probable result of appellees' conduct and, hence, that appellees' conduct is a proximate cause of their injury. Appellants' complaint uses the language from the proximate-cause rule stated above and charges that appellees' actions are

proximate causes of appellants' injury.  For example, appellants' negligence claim alleges that appellees' negligent conduct "caused waste fluid and/or other harmful contaminants to enter into and significantly and/or irreparably or permanently impair and damage the quality and commercial viability of gas and oil reservoirs, [appellants'] Property, and the Bethel Wells" and that appellees' "acts and/or omissions . . . were and continue to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶69}  Appellants' negligence per se claim likewise alleges that appellees' violations of "Ohio laws and regulations were a direct and proximate cause of waste fluid and/or other harmful contaminants entering into and significantly and/or irreparably or permanently impairing and damaging the quality and commercial viability of gas and oil reservoirs, [appellants'] Property, and the Bethel Wells" and that "Defendants' acts and/ or omissions referenced herein were, and continue to be, the direct and proximate cause of damages to [appellants] and the Property as more fully set forth in Count VIII below."

{¶70}  Appellants' trespass claim similarly alleges that appellees' conduct has "caused waste fluid to enter upon . . .

[appellants'] Property" and that appellees' "unauthorized and unpermitted entry upon the Property in the possession of [appellants] has directly caused physical damage to [appellants'] Property . . . and actual interference with the reasonable and foreseeable use of [appellants'] Property, along with other damages."

{¶71} Appellants' nuisance claim also alleges that appellees' "actions in creating this nuisance were, and continue to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶72} Furthermore, appellants' conversion claim asserts that appellees' "conversion of [appellants'] Property has been, and continues to be, the direct and proximate cause of damages to [appellants] and the Property."

{¶73} These allegations suffice for purposes of notice pleading. *See Ferchill v. Beach Cliff Bd. of Trustees*, 2005-Ohio-3475, ¶ 8-9 (8th Dist.) (complaint sufficiently alleged proximate cause when it stated, "As a direct and proximate result of the conduct of the Defendants, Plaintiffs John and Sharon Ferchill were deprived of the use and enjoyment of their property."); *see also Beretta*, 2002-Ohio-2480, at ¶ 29

("Appellant was not required to allege with specificity that particular guns were defective and as a result caused particular injuries."); *id.* at ¶ 24, quoting *James v. Arcadia Machine & Tool*, N.J.Super. No. ESX-L-6-59-99, 26-27 (Dec. 11, 2001) ("'With no more than paper allegations and a complete absence of discovery, it would be manifestly unfair to bar the Plaintiff[s] [Newark and its mayor] from attempting to present appropriate evidence to bridge the gap between breach of duty and damages.'"); *see also James v. Arms Tech., Inc.*, 359 N.J.Super. 291, 312 (App. Div. 2003) (quoting *James v. Arcadia Machine & Tool* and concluding that the plaintiff's complaint, "[i]ndulgently read," adequately alleged proximate cause when it asserted that the "defendants purposely or negligently flood the gun market, knowing that their steady supply of guns will feed or facilitate the illegal sale of weapons to criminals and other unlawful users" and that the "defendants individually and collectively failed to develop and in fact discourage the development of reasonable safeguards over the distribution scheme, and that defendants refuse to oversee or supervise the control of handgun distribution in order to prevent the foreseeable channeling of guns to such an illegal market"). We

emphasize that "at this posture of the case, we are not concerned with" appellants' "ability to prove the facts as alleged in the complaint." *James v. Arms Tech., Inc.*, 359 N.J.Super. at 312. Instead, the question is whether appellants' complaint satisfies Ohio's notice-pleading rule.

**{¶74}** Therefore, contrary to appellees' innuendos, appellants' complaint need not recite scientific facts to prove that appellees' conduct is, in fact, the proximate cause of appellants' injury. Requiring a complaint to recite scientific proof is inconsistent with notice pleading. Moreover, some of the evidence that appellants may need to prove their claims may be in appellees' possession. *See York*, 60 Ohio St.3d at 145 ("[v]ery often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession.").

**{¶75}** Furthermore, we do not agree with Tallgrass's argument that appellants' complaint must use the phrasing from *Queen City Terminals* and precisely allege "'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" 73 Ohio St.3d at 618, quoting Prosser & Keeton at 263. This "reasonable connection" rule simply is

another way of explaining the meaning of "proximate cause." *See id.*, quoting Prosser & Keeton ("Proximate causation has been described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'"); *see also Johnson*, 44 Ohio St.3d at 57, quoting Prosser & Keeton at 264 ("'Proximate cause'—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct.'").  This "reasonable connection" rule is not an independent element that must be pled in a complaint in order to survive a Civ.R. 12(B)(6) motion to dismiss.

{¶76}  Additionally, as we noted above, before the 1970 enactment of "the Ohio Rules of Civil Procedure in 1970, this state's civil practice required verified and particularized pleadings."  *Poulos v. Parker Sweeper Co.*, 44 Ohio St.3d 124, 125 (1989).  However, "[w]ith the advent of the Modern Courts Amendment and notice pleading, the Civil Rules provided for extensive pretrial discovery and disclosure of facts within the knowledge and control of the litigants.  The purpose of these reforms was to place the respective litigants in parity, avoid 'surprise,' and encourage settlement of controversies prior to

54

trial."[8]  *Id.* at 125-26.  The notice-pleading standard does not,

therefore, require a plaintiff to precisely explain the specific

evidence that supports each claim for relief.  Consequently,

appellants need not allege proximate cause with particularity.

{¶77}  Furthermore, as appellants correctly assert, their

complaint need not meet evidentiary burdens of proof, like the

---

[8] One court has explained the underlying philosophy of the
discovery process as follows:

> The philosophy of discovery as contained in the Ohio Civil
> Rules is basically one that affords liberal rights to
> discovery so that the basic facts may become known to all the
> parties prior to the time when the action comes on for trial.
> This includes the procuring of information which of itself
> may not be admissible in Court but which in turn may lead to
> admissible evidence.  This philosophy is founded upon the
> theory that all parties should be entitled to become aware of
> all the facts pertaining to any particular occurrence, so
> that a lawsuit may be determined on the presentation of all
> of the facts as distinguished from being determined only on
> a presentation of such facts as may be within the knowledge
> of one party.  This philosophy is written into the rules so
> that it will be possible for all parties to become aware of
> all facts and that an unjust disposition will not result
> because it was impossible for one of the parties to learn the
> truth.  It is the function of counsel for each side of a
> lawsuit to diligently attempt to ascertain all the facts in
> connection with an occurrence and, of course, to have
> knowledge of all the applicable law.

*Jira v. Erie Lackawanna R. Co.*, 25 Ohio Misc. 161, 165-66 (Ohio
Com.Pl.1970).

standard identified in *Pang v. Minch*, to survive a motion to dismiss.  In *Pang*, the court discussed § 433B(1) and § 433B(2) of the Restatement.  Section 433B(1) provides as follows:  "'(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.'" *Pang*, 559 N.E.2d at 1324.[9]  The court observed that § 433B(1)

> "states the general rule as to the burden of proof on the issue of causation.  As on other issues in civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence.  This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm."

*Id.*, quoting 2 Restatement of the Law 2d, Torts 442, § 433B(1), Comment a (1965).

{¶78}  Based upon this provision of the Restatement, the court held:

> [W]here a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm.  *See Porterie v. Peters* (1975), 111

---

[9] The pinpoint citation for the Ohio State Reports, Third Series is not available on Westlaw.

56

> Ariz. 452, 455-456, 532 P.2d 514, 517-518; *Richardson v. Volkswagenwerk, A.G.* (W.D.Mo.1982), 552 F.Supp. 73, 82-83.  Once this burden has been met, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. Thereafter, the burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment.

*Id.; accord Nichols v. Hanzel*, 110 Ohio App.3d 591, 603 (4th Dist.1996).

> The *Pang* court held that the language in the Restatement
>
> place[s] upon the plaintiff the burden to demonstrate that he has suffered an injury and that the tortious act of each defendant was a substantial cause in producing that injury.  Once this burden has been met, it is the responsibility of the defendants to apportion the harm if joint and several liability is to be avoided.

*Pang*, 559 N.E.2d at 1325.

{¶79}  *Pang* did not, however, discuss whether the plaintiff's complaint must satisfy this evidentiary burden.  Instead, the plaintiff's case in *Pang* was tried before a jury, and the question on appeal concerned evidentiary burdens at trial, not pleading burdens placed upon a plaintiff alleging that one or more tortfeasors caused the plaintiff's injuries.

{¶80}  Furthermore, the Ohio Supreme Court later held that "[t]he determination of whether an actor's conduct was a

substantial factor in producing the plaintiff's injury is a question of fact to be determined by the trier of fact." *Queen City Terminals*, 73 Ohio St.3d at 618, citing *Baldridge v. Wright Gas Co.*, 154 Ohio St. 452 (1951), paragraph three of the syllabus. Consequently, based upon the foregoing reasons, in the case sub judice we believe that the trial court incorrectly determined that appellants' complaint failed to sufficiently allege proximate cause.

## JOINT AND SEVERAL LIABILITY

**{¶81}** Appellees further assert that appellants' complaint fails to give them adequate notice of the claims against them because it lumps all appellees together rather than outline each individual appellee's purported wrongs. We do not agree.

**{¶82}** Ohio recognizes joint and several liability when the negligence of two or more persons either combine or concur to produce a single indivisible injury. *See Schindler v. Std. Oil Co.*, 166 Ohio St. 391 (1957), paragraph one of the syllabus ("Where two or more persons, under circumstances creating primary liability, either, by a combination of their actions, create a nuisance causing damage or, by their concurrent negligence, directly produce a single indivisible injury, and

where it is impossible to measure or ascertain the amount of damage created by any one of the persons, such persons, as jointly and severally liable, may be joined as defendants in an action, based upon such conduct, by one who has been damaged thereby."); *Glass v. McCullough Transfer Co.*, 159 Ohio St. 505, 506 (1953), paragraph four of the syllabus ("Where damage or injury is proximately caused by independent but concurrent wrongful acts of two or more persons, such wrongdoers may be joined as defendants even though they did not act in concert in the execution of a common purpose."); *Meyer v. Cincinnati St. Ry. Co.*, 157 Ohio St. 38, 41 (1952), quoting 1 Cooley on Torts 277, § 86 (4 Ed.) ("'where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concerted action'"); *see also Larson v. Cleveland Ry. Co.*, 142 Ohio St. 20, 32 (1943) ("if each of two railroads negligently manages its trains so as to result in a collision, causing injury which results in death, both may be joined as defendants in a single action"); *Wery v. Seff*, 136 Ohio St. 307 (1940), paragraph five of the syllabus ("When two or more persons, under circumstances creating primary

accountability, directly produce a single, indivisible injury by their concurrent negligence, they are jointly and severally liable, even though there is no common duty, common design or concerted action."); *see generally Black's* (defining "the joint-and-several liability doctrine" as "[t]he principle that when two or more persons cause an injury, each is liable for the full amount of damages"); *Pang*, 559 N.E.2d at 1323, quoting 2 Restatement of the Law 2d, Torts 440, § 433A, Comment i (1965) ("Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis*,* and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." [emphasis omitted.]).

{¶83} In *Schindler*, for example, the plaintiffs filed a complaint against five oil companies, among others, and alleged that the oil companies allowed gasoline to escape from their properties and contaminated the plaintiffs' property. *Schindler*, 166 Ohio St. at 393 ("The present action was instituted against all those who, at various times, either by their creation of a nuisance or as a result of negligence, both

in combination and severally, caused gasoline to permeate the land of the plaintiffs and to pollute their wells"). The Ohio Supreme Court determined that the plaintiffs' complaint stated a claim for joint and several liability when the complaint alleged that the negligence of all "of the defendants caused a single indivisible injury to plaintiffs." *Id.* at 395. The court further stated that a "reasonable inference" from the complaint was that determining the amount of injury that "any single defendant" caused was not possible. *Id.* The court further noted that in reviewing the sufficiency of the allegations, the question was not whether the plaintiffs had "proof to establish the claims" but whether the complaint adequately alleged joint and several liability. *Id.*

**{¶84}** In the case before us, even if appellants' complaint does not echo the same language as *Schindler*, we believe the complaint nonetheless contains sufficient allegations to indicate that appellants are seeking to hold appellees jointly and severally liable for their injuries. In fact, the complaint alleges that appellees are "jointly and severally" liable. Appellants have asserted their claims for relief against all appellees because they essentially have alleged that appellees'

wrongful acts caused a single, indivisible injury to appellants. At the very least, the complaint gives rise to a reasonable inference that appellants have sufficiently alleged that appellees are jointly and severally liable for appellants' injuries. *See generally Jackson v. Glidden Co.*, 98 Ohio App.3d 100, 107 (8th Dist.1995) ("where the allegations of the complaint are taken as true, the appellants' amended complaint states that the appellees committed tortious acts and that the appellants were injured as the proximate result of those acts. . . . The appellants have set forth sufficient allegations to withstand a motion to dismiss, even though all potential defendants have not been joined in the action.").

**{¶85}** Consequently, we do not agree with appellees' arguments that appellants must detail each appellee's individual wrongful conduct. Appellants did not allege that each appellee engaged in separately identifiable conduct or that they have caused separately identifiable injuries. Moreover, this appeal involves 14 appellees, and 15 defendants remain named in the complaint. If appellants were required to outline the same claims 15 times when seeking to hold the defendants jointly and severally liable for appellants' injury, the complaint could be

lengthy beyond reason.  Furthermore, appellees' argument defies the principle that a complaint need only contain a short and plain statement showing that the pleader is entitled to relief.

{¶86}  We therefore do not agree with appellees that appellants' complaint fails the notice-pleading test by alleging that appellees are jointly and severally liable for appellants' injury.

TRESPASS

{¶87}  None of the parties raised any specific arguments on appeal regarding appellants' trespass claim.  Moreover, during the trial court proceedings, appellees appeared to have argued that appellants' trespass claim fails to state a claim because the complaint fails to establish (1) proximate cause between appellants' damages and appellees' conduct, and (2) standing.

{¶88}  On appeal, appellees likewise do not specifically argue that the complaint fails to state a trespass claim and limit their arguments to the proximate-cause and standing issues.  As we determined above, however, appellants' complaint adequately alleges that appellees' conduct proximately caused their injuries and sufficiently shows that appellants have standing to sue.

**{¶89}** Furthermore, none of the appellees appear to dispute the principle that "a mineral owner may have a valid trespass claim when the injected waste migrates across property lines and unreasonably interferes with access to recoverable minerals, such as oil and gas." Anderson, *Subsurface "Trespass": A Man's Subsurface Is Not His Castle*, 49 Washburn L.J. 247, 271 (2010); *see also Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 22 and 26 (1996) (in a trial involving the "deepwell disposal of wastes," appellants attempted to establish an "indirect" trespass, which "was complicated by the nature of the invasion of property that appellants were attempting to prove").

**{¶90}** Consequently, the trial court incorrectly dismissed appellants' trespass claim.

NUISANCE

**{¶91}** Appellants argue that the trial court incorrectly determined that their nuisance claim failed to state a claim upon which relief can be granted. Appellants state that the trial court wrongly determined that the complaint must allege that appellees' conduct in creating a nuisance caused appellants to suffer "physical discomfort." Appellants contend that damages for nuisance are not limited to those damages resulting

64

from physical discomfort. Appellants assert that the law of nuisance also compensates property owners for the decrease in the value of their property and for the loss of use and enjoyment of their property. Appellants state that their complaint alleged that appellees "have restricted and infringed upon [appellants'] use and enjoyment of the [p]roperty, creating a qualified nuisance for [appellants]."

{¶92} Tallgrass and JDDC maintain that appellants must allege "physical discomfort" to properly plead a nuisance claim. Tallgrass also reiterates a recurring theme: Appellants' nuisance claim fails to detail how each appellee "intentionally, reckless, or negligently invaded [appellants'] interest in the use and enjoyment of [their] property."

> "'Nuisance' is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally." *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 431-432, 28 O.O. 369, 55 N.E.2d 724. For there to be an action for nuisance, the injury must be real, material, and substantial. *Eller v. Koehler* (1903), 68 Ohio St. 51, 55, 67 N.E. 89.

*Banford v. Aldrich Chem. Co.*, 2010-Ohio-2470, ¶ 17.

{¶93} In their complaint, appellants have alleged a "qualified nuisance." "[A] qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another." *Taylor* at paragraph three of the syllabus. Thus, "'a civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury.'" *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St.3d 274, 275-76 (1992), quoting *Rothfuss v. Hamilton Masonic Temple Co.*, 34 Ohio St.2d 176, 180 (1973).

{¶94} "Damages for nuisance may include diminution in the value of the property, costs of repairs, loss of use of the property, and compensation for annoyance, discomfort, and inconvenience." (Citations omitted.) *Banford*, 2010-Ohio-2470, at ¶ 17. "Each of these elements of recovery represents a separate and distinct type of damage, and the absence of one does not preclude recovery for the others." (Citations omitted.) *Athens Co. Regional Planning Comm. v. Simms*, 2006-

Ohio-2342, ¶ 18 (4th Dist.); *Phillips Petroleum Co. v. Ruble*, 126 P.2d 526, 527 (Okla. 1942), quoting *Oklahoma City v. Eylar*, 61 P.2d 649 (Okla. 1936), paragraph three of the syllabus ("'The personal inconvenience, annoyance, and discomfort to the occupant of real estate caused by the maintenance by another of a temporary nuisance in the immediate vicinity of said real estate is a separate and distinct element of damage from that of the depreciation of the usable or rental value of the real estate occupied; the measure of such damages being reasonable compensation for the injury.'"); *accord Frey v. Queen City Paper Co.*, 79 Ohio App. 64, 71 (2nd Dist.1946) (quoting *Phillips Petroleum* with favor).

{¶95} If a plaintiff requests "damages for annoyance and discomfort in a nuisance claim," the "plaintiff must establish that the nuisance caused physical discomfort." *Banford*, 2010-Ohio-2470, at ¶ 28. The *Banford* court explained that "[a] physical component is implied in much of [the] case law that discusses damages for annoyance and discomfort." *Id.* at ¶ 26. The court observed that cases have allowed annoyance and discomfort damages for a nuisance when "the nuisance had affected a person's senses," such as "sight, sound, smell,

hearing, or touch," and resulted in "physical discomfort." (Citations omitted.) *Id.*

**{¶96}** In the case at bar, appellants did not limit their request for nuisance damages to annoyance and discomfort. Instead, they also requested damages for the loss in value and the loss of use and enjoyment of the property, among many other types of losses. Thus, even if the complaint fails to give appellees adequate notice that appellants suffered physical discomfort, the absence of this allegation does not mean that appellants' complaint fails to state a nuisance claim. Appellants' complaint otherwise gives appellees adequate notice that appellants are pursuing a nuisance claim and seeking nuisance-related damages. Appellants' complaint alleges that appellees

> failed to exercise due care and were negligent in the operation and/or maintenance of their Injection Wells so as to create a potential and unreasonable risk of harm that waste fluid would contaminate and pollute . . . [appellants'] Property, which in due course occurred and resulted in harm, injury, and/or damage to [appellants] and [appellants'] Property.

Appellants' nuisance claim thus alleges that appellees were negligent and that this negligence created a potential and unreasonable risk of harm that injured appellants' property.

*Taylor*, 143 Ohio St. 426, at paragraph three of the syllabus.

Moreover, appellants' negligence claim identifies more than 30

ways in which appellees were negligent. *Allen Freight Lines*, 64

Ohio St.3d at 275-76. Contrary to Tallgrass's argument,

appellants' complaint need not precisely detail how each

individual appellee separately and "intentionally, reckless, or

negligently invaded [appellants'] interest in the use and

enjoyment of [their] property."

{¶97} The complaint further claims that appellees' wrongful

conduct has "restricted and infringed upon [appellants'] use and

enjoyment of the Property, creating a qualified nuisance for

[appellants]."

> Appellants' complaint also asserts that appellees'
>
> Injection Well operations have imposed a nuisance upon
> [appellants] in the form of financial, environmental,
> and emotional hardship inasmuch as the [appellees']
> Injection Well operations have overtaken and damaged gas
> and oil production on [appellants'] Property with a
> toxic substance that is regulated under Ohio law to
> prevent human and environmental contact, thereby
> exposing [appellants'] Property, including but not
> limited to those impacted Bethel Wells, to additional
> regulatory requirements where said requirements would
> otherwise not have been imposed.

{¶98} The complaint additionally claims that (1) the

nuisance is ongoing, (2) the injury to appellants' property is

likely permanent, and (3) appellees' conduct is the proximate cause of the injuries that they have sustained.

**{¶99}** In sum, appellants' nuisance allegations suffice to state a claim upon which relief can be granted. *See Ogle*, 2008-Ohio-7042, at ¶ 8 (4th Dist.) (complaint satisfied notice pleading for nuisance claim when the plaintiffs claimed "that the location, size, and appearance of the proposed telecommunications tower would create a risk of physical harm and cause diminution in the fair-market value of their property").

**{¶100}** Consequently, we agree with appellants that the trial court erred by dismissing their nuisance claim.

RES IPSA LOQUITUR

**{¶101}** Appellants argue that the trial court incorrectly dismissed their res ipsa loquitur claim. They contend that even if res ipsa loquitur is not an independent cause of action, they still were "free to notice that the evidence will satisfy the res ipsa elements."

**{¶102}** Appellees assert that the trial court properly dismissed this claim because the res ipsa loquitur doctrine is not an independent cause of action, but an evidentiary rule.

{¶103} "The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery." *Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 167, 169 (1980). Instead, the doctrine "is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrated." *Id.* Thus, the doctrine "does not alter the nature of the plaintiff's claim in a negligence action; it is merely a method of proving the defendant's negligence through the use of circumstantial evidence." *Id.* at 170.

{¶104} A plaintiff must establish two elements for the res ipsa loquitur doctrine to apply:

> "(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. George Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66-67, 52 O.O.2d 366, 262 N.E.2d 703; *Fink* [*v. New York Cent. R. Co.*], 144 Ohio St. 1, 28 O.O. 550, 56 N.E.2d 456 [(1944)].

*Estate of Hall v. Akron Gen. Med. Ctr.*, 2010-Ohio-1041, ¶ 27.

{¶105} Furthermore, a plaintiff need not "specifically plead the doctrine in order to invoke it," and "specific allegations of negligence in the complaint [do not] foreclose reliance upon it." *Jennings Buick*, 60 Ohio St.3d at 169; *see Fink v. New York Cent. R. Co.*, 144 Ohio St. 1, 7 (1944) ("if the allegations of the petition and the proof in support thereof call for the application of the rule it should be applied irrespective of whether the petition contains allegations of specific acts of negligence").

{¶106} Additionally, nothing appears to prohibit a plaintiff from pleading (1) a negligence claim using specific acts of negligence, and (2) an alternative negligence claim using an inference of negligence. *See Honey v. George Hyman Const. Co.*, 63 F.R.D. 443, 451, 18 Fed.R.Serv.2d 1347 (D.D.C.1974) ("a plaintiff may always plead inconsistent causes of action or in the alternative, and . . . may rely on both res ipsa loquitur and proof of specific acts of negligence"); 70 Ohio Jur. 3d Negligence § 157 ("Under the analogous Federal Rule, it is permissible to plead both specific acts of negligence and res ipsa loquitur although subsequent proof of such specific acts would negate the possibility of recovery on a res ipsa loquitur

theory."). Indeed, Civ.R. 8(E)(2) allows a plaintiff to "set forth two or more statements of a claim . . . alternately or hypothetically, either in one count . . . or in separate counts . . ."

{¶107} In the case sub judice, appellants' complaint sets forth a negligence claim using specific acts of negligence. The complaint's "res ipsa loquitur" claim alleges the elements needed to invoke the inference of negligence, but does not present the claim as an alternate negligence claim. We recognize that the res ipsa loquitur doctrine does not stand alone as an independent cause of action. *See Jennings Buick*, 63 Ohio St.2d at 169. The proper remedy is not outright dismissal, however. Instead, on remand, the trial court should allow appellants an opportunity to amend their pleading to plead an alternate negligence claim that invokes the inference of negligence that the res ipsa loquitur doctrine provides. We again note, however, that failing to plead a negligence claim using the res ipsa loquitur doctrine does not preclude invoking the doctrine at a later point in the proceedings.

CONVERSION

{¶108} Appellants also argue that the trial court incorrectly determined that their conversion claim failed to state a claim upon which relief could be granted. Appellants contend that "[t]he court's findings on conversion ignore decisions permitting mineral conversion claims and ignore the conversion of [appellants'] well infrastructure (equipment, tools, casing, etc.) that defendants have effectively converted into repositories for their injected waste-fluids."

{¶109} Appellees assert that appellants' conversion claim fails to allege that appellees converted appellants' personal property. They argue that appellants allege that appellees converted appellants' real property, i.e., their mineral estate. Appellees thus contend that appellants' conversion claim fails to state a claim upon which relief can be granted.

{¶110} Conversion is "'the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *Allan Nott Ents, Inc. v. Nicholas Starr Auto, L.L.C.*, 2006-Ohio-3819, ¶ 36, quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). "To prevail on a conversion claim, a plaintiff must show: (1) ownership or right to

possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property right, and (3) damages." *Bender v. Logan*, 2016-Ohio-5317, ¶ 74 (4th Dist.), citing *Mitchell v. Thompson*, 2007-Ohio-5362, ¶ 37 (4th Dist.), and *Orebaugh v. Am. Family Ins.*, 2007-Ohio-3891, ¶ 27 (4th Dist.).

**{¶111}** Additionally, conversion only applies to personal property, not real property. *Sandy v. Rataiczak*, 2008-Ohio-6212, ¶ 9 (7th Dist.); *First Fed. Bank v. Angelini*, 2007-Ohio-6153, ¶ 8 (3d Dist.); *see also* Ernst, *Ohio Tort Law*, 2d, § 37:1 (2023) ("Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may be justly required to pay the other the full value of the chattel."). Minerals, like oil and gas, that remain "in place are the same as any part of the realty." *Pure Oil Co. v. Kindall*, 116 Ohio St. 188, 201 (1927); *see also Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-395, ¶ 27, quoting 3 Kuntz, *A Treatise on the Law of Oil and Gas*, Section 38.2 (2021) ("'it is generally recognized that unaccrued royalty is properly classified as real property, and the right to receive unaccrued royalty has been so

classified for a wide variety of purposes'"); *Browne v. Artex Oil Co.*, 2019-Ohio-4809, ¶ 22 ("Ohio is in line with the general consensus among the states that an oil and gas lease creates a real-property interest."). Thus, subsurface minerals are considered part of the real estate until extraction. *Schlabach v. Kondik*, 2017-Ohio-8016, ¶ 23 (7th Dist.). Minerals "become personal property immediately upon severance." *Id.*; *accord Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 243 (1949) ("Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance."); *Yoder v. Stocker & Sitler Oil Co.*, 1996 WL 251821, *11 (5th Dist. Feb. 26, 1996) ("upon its inevitable extraction, oil and gas becomes personal property"); *see also Waterloo Coal Co. v. Maynard*, 1994 WL 675682, *4 (4th Dist. Nov. 8, 1994) (an action in trespass lies for the wrongful removal of minerals or the wronged party may sue for damages for conversion of the several minerals); *Athens & Pomeroy Coal & Land Co. v. Tracy*, 22 Ohio App. 21, 26–27 (4th Dist.1925) (a plaintiff may "sue for the damages resulting from the conversion of the severed property. It is the old action of trover. It presupposes the ownership by the

plaintiff of the article severed from the real estate, as though the severance had been accomplished by the owner himself, and rests upon the fiction that the defendant had found, or otherwise became possessed of, such chattel, and unlawfully converted the same to his own use").

{¶112} In the case at bar, appellants allege that appellees converted appellants' mineral reservoirs and have "interfered with" appellants' "dominion and/or control over the Bethel Wells and [appellants'] chattel property" that they use "in connection with the operation of the Bethel Wells."

{¶113} To the extent that appellants have alleged conversion of their mineral estate, which Ohio law considers to be real property, their conversion claim fails to state a claim upon which relief can be granted. Appellants' conversion claim also references "chattel property," however. Thus, to the extent that appellants allege that appellees have converted their personal property, their conversion claim states a claim upon which relief can be granted. Given that we must construe appellants' complaint so as to do substantial justice, Civ.R. 8(F), we believe that it arguably states a claim for conversion

of their personal property.  Therefore, the trial court erred by dismissing appellants' conversion claim.

### EMOTIONAL DAMAGES

{¶114} Within their second assignment of error, appellants assert that the trial court incorrectly dismissed their claims for emotional damages and should have instead allowed them to amend their pleading.  For ease of discussion, we address the issue within the context of appellants' first assignment of error.

{¶115} In their complaint, appellants listed all of the damages that they collectively suffered as a result of appellees' alleged negligence, negligence per se, nuisance, conversion, and trespass under one heading rather than stating the damages within the context of each claim for relief.  Some of the claimed damages include (1) "inconvenience, distress, anxiety, and/or emotional and mental anguish," (2) "inconvenience and discomfort caused by interference with the peaceful possession and enjoyment of" their property, (3) "discomfort and annoyance related to the loss of use and/or loss of enjoyment and/or contamination of the Property, and/or" (4) "loss of the quality of life [appellants] otherwise enjoyed."

{¶116} Appellees argue that the trial court correctly dismissed appellants' request for damages stemming from these emotional harms because, as a business entity, Bethel Oil cannot recover emotional damages.

{¶117} Even if appellees are correct that a business entity, such as Bethel Oil, cannot recover damages for emotional harm, *see Patel v. AT&T*, 1997 WL 39907, *2 (7th Dist. Jan. 30, 1997) ("it affronts common sense to believe a corporation can suffer emotional distress"), appellants' listing of the damages that they suffered is not a "claim for relief" subject to dismissal. Instead, each item of alleged damages relates to one of the causes of action listed in the preceding sections of the complaint. Thus, appellants' alleged damages are elements of the claims for relief, not independent claims for relief. *See, e.g., Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 23, citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984) (damages are one of the elements of a negligence cause of action); *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 2015-Ohio-2166, ¶ 30 (10th Dist.) (damages are one of the elements of conversion cause of action); *see generally Binns v. Fredendall*, 32 Ohio St.3d 244, 246 (1987)

("the emotional or psychiatric injuries which have arisen as a proximate result of the defendant's tortious act are compensable under the traditional rule for recovery"). Because damages are not an independent cause of action, the proper remedy was not to dismiss appellants' "claims" for emotional damages. Instead, as we explain in our discussion of appellants' second assignment of error, the trial court should have permitted appellants to amend their complaint to correct any ambiguity regarding their request for emotional damages.

### CONCLUSION

{¶118} In sum, we believe that appellants' complaint does not fail to state a claim. The complaint gives appellees sufficient notice that appellants are alleging that appellees' well-injection operations have contaminated their mineral estate. Furthermore, even if appellants' complaint "could have been written more artfully, . . . the degree of detail demanded by [appellees] would require litigants to write a book when filing legal actions." *Sacksteder*, 2012-Ohio-4452, at ¶ 65 (2d Dist.).

{¶119} Once again, we emphasize that, in general, a Civ.R. 12(B)(6) motion is viewed with disfavor, rarely granted, and reserved for those rare cases that cannot possibly succeed.

*Wilson, supra*; *Tri-State Computer Exchange, supra.* The case sub judice is not one of those cases.

{¶120} Accordingly, based upon the foregoing reasons, we sustain appellants' first assignment of error.

II

{¶121} In their second assignment of error, appellants assert that the trial court abused its discretion when it denied their motion to amend their complaint.

{¶122} "The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court." *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99 (1999). "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 2014-Ohio-1966, ¶ 67, quoting *State v. Brady*, 2008-Ohio-4493, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a '"sound reasoning process."'" *State v. Darmond*, 2013-Ohio-966, ¶ 34, quoting *State v. Morris*, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). The abuse of discretion

standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

{¶123} "The general policy of Civ.R. 15(A) favors liberal amendment of pleadings." *State ex rel. Reese v. Ohio Dept. of Rehab. & Correction Legal Dept.*, 2022-Ohio-2105, ¶ 30; *Salemi v. Cleveland Metroparks*, 2016-Ohio-1192, ¶ 11 (Civ.R. 15(A) "mandate[s] that courts 'shall freely give leave [to amend a pleading] when justice so requires,'" and the Ohio Supreme Court has a "liberal position on amendments"). Indeed,

> [t]he spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ.R. 1(B) requires that the Civil Rules shall be applied "to effect just results." Pleadings are simply an end to that objective. The mandate of Civ.R. 15(A) as to amendments requiring leave of court, is that leave "shall be freely given when justice so requires."

*Peterson v. Teodosio*, 34 Ohio St.2d 161, 175 (1973).

{¶124} Thus, a trial court ordinarily abuses its discretion by denying a timely filed motion for leave to file an amended pleading when the amendment would allow the pleading party to "set forth a claim upon which relief can be granted." *Id.* Conversely, a trial court does not abuse its discretion by denying a party leave to file an amended pleading when amending

82

the pleading "would be futile." *State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 20, citing *ISCO Indus., Inc. v. Great Am. Ins. Co.*, 2019-Ohio-4852, ¶ 52 (1st Dist.); *see Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 123 (1991) ("[W]here a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading."). Additionally, the Ohio Supreme Court has indicated that "'absent a finding of bad faith, undue delay or undue prejudice to the opposing party,'" a court should grant a motion for leave to amend. *State ex rel. Doe v. Capper*, 2012-Ohio-2686, ¶ 8, quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6 (1984).

{¶125} In the case sub judice, as we discussed under appellants' first assignment of error, the trial court, at appellees' insistence, required appellants to meet a heightened pleading standard that does not exist under Ohio Supreme Court case law. Ohio's notice-pleading standard does not require appellants to allege particularized facts and does not, as appellees insinuate, require appellants to cite the evidence to support each claim for relief. Thus, as we stated above, the

trial court erred by dismissing appellants' complaint. To the extent that appellants' complaint contains pleading deficiencies that we discussed above, on remand, the trial court should allow appellants an opportunity to amend their complaint. At this stage, nothing appears to indicate that to allow appellants to amend their complaint would be futile.[10]

{¶126} As we suggested above, appellants' complaint need not resemble a scientific textbook full of facts, figures, and expert testimony. Instead, Civ.R. 8(A) simply requires a short and plain statement showing that appellants are entitled to relief. Thus, on remand, to the extent appellants request leave to amend their complaint, the amended complaint need not include the level of detail that appellees have demanded throughout these proceedings.

---

[10] We point out that when a trial court's denial of a motion for leave to amend a complaint "'"can fairly be read to have been based on a determination that the amended complaint . . . would not withstand a motion to dismiss, the denial is a legal question that is reviewed de novo."'" *Gilliam v. Crowe*, 2017-Ohio-5494, ¶ 8 (2d Dist.), quoting *Marx v. Ohio State Univ. College of Dentistry*, 1996 WL 87462, *3 (10th Dist. Feb. 27, 1996), quoting *Rainer v. Westinghouse Elec. Corp.*, 65 F.3d 169, *2 (6th Cir. 1995).

{¶127} Given that we have sustained appellants' first assignment of error and agreed that the trial court erred by dismissing appellants' complaint, we believe that appellants' second assignment of error largely is moot. Because appellants' initial complaint satisfies Ohio's notice-pleading standard, as we discussed above, appellants need not file an amended 63-page complaint that contains detailed factual allegations. To the extent any ambiguities exist regarding appellants' conversion claim and request for emotional damages, as we discussed above, the trial court should give appellants an opportunity to amend their complaint (and again, it need not include detailed factual allegations).

{¶128} Additionally, if any doubt remains regarding appellants' pleading burden, we emphasize that on remand, the liberal pleading rules that we outlined in this opinion govern, not the heightened pleading standard that appellees cited in their motions to dismiss and appellate briefs. Further, we caution appellees not to present the trial court with misleading case quotations when precedent from the Ohio Supreme Court is available, as it widely is for Civ.R. 12(B)(6) motions to

dismiss.  Notably, appellees also do not cite any case authority from this court to support their heightened pleading standard.

**{¶129}** Accordingly, based upon the foregoing reasons, we overrule appellants' second assignment of error as moot, reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND
REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT WITH
THIS OPINION.

86

JUDGMENT ENTRY


It is ordered that the judgment be reversed and remanded for further proceedings consistent with this opinion. Appellants shall recover of appellees the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court


BY:_____
Peter B. Abele, Judge


NOTICE TO COUNSEL

87

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

APPENDIX

MOTIONS TO DISMISS

Diversified

{¶130} Diversified, Nuverra, Heckmann, Deeprock Operating, Deeprock Disposal, Brian Chavez, and Christyann Heinrich-Chavez (Diversified/Deeprock) filed a joint motion to dismiss. They argued that although appellants alleged that Diversified/Deeprock "operate injection wells somewhere in Washington County or Athens County, Ohio," the complaint does not further specify underlying facts to connect Diversified/Deeprock's operations with any of appellants' alleged damages. Diversified/Deeprock claimed that the complaint does not reveal "which of their injection wells, if any, allegedly damaged which of [appellants'] property interests."

{¶131} Diversified/Deeprock also contended that appellants' complaint fails to allege sufficient operative facts to give them notice of the nature of the action. They argued that "[t]o constitute fair notice, [appellants] must allege sufficient underlying facts that relate to and support the alleged claim and may not simply state legal conclusions." They additionally

asserted that notice pleading does not "eliminate the need for a properly researched and factually supported cause of action." *Bratton v. Adkins*, 9th Dist. Summit No. 18136, 1997 WL 459979, *1, citing *Matter of Oak Creek Florists* (S.D.Ohio 1988), 86 B.R. 531. Diversified/Deeprock argued that appellants' complaint does not contain "sufficient underlying facts" to give them notice of "the basic 'who', 'what', 'when', and 'where' so they may know at least the bare minimum about the claims against them."

{¶132} Diversified/Deeprock further asserted that (1) res ipsa loquitur is not a separate cause of action, (2) appellants' conversion claim fails to state a claim because Ohio law does not recognize conversion of real property, and (3) Ohio law does not recognize claims for a business entity's emotional damages, and thus, "any claims asserted by Bethel Oil & Gas, LLC for 'emotional damages' must be dismissed."

### Redbird

{¶133} Redbird argued that appellants lack standing because they did not "allege ownership of any of the mineral interests" that Redbird supposedly damaged. Redbird claimed that the complaint does not (1) identify any of the appellants "as the

actual owner" of the mineral interests or (2) "plead an actual injury sufficient to establish standing." Redbird contended that "[b]ecause no [appellant] is identified as the actual owner of the allegedly damaged mineral interests, no [appellant] has suffered an injury in fact; thus, no [appellant] has standing to bring this action."

**{¶134}** Redbird further argued that appellants' complaint contains "opaque allegations" that "fall short of Ohio liberal pleading standards." Redbird claimed that appellants essentially alleged only "that someone somehow damaged something that [appellants] may or may not own" and that the allegations thus fail to satisfy notice-pleading standards.

**{¶135}** Redbird also asserted that appellants' complaint does not set forth facts to establish a link between appellants' alleged injuries and Redbird's conduct. Redbird contended that the complaint does not state what property has been damaged or "how and when the property was damaged." Redbird alleged that aside from the B.P. Pinkerton #1 well, Redbird does "not know which of its injection wells allegedly damaged which of [appellants'] properties." Redbird faulted appellants for

failing to "plead a connection between any specific property interest and an alleged source of the tortious conduct." Redbird stated that appellants' "scattershot approach does not satisfy basic notice pleading as it fails to identify the basic 'who', 'what', 'when', and 'where' so that [appellees] may know at least the bare minimum regarding the claims against them."

{¶136} Like the other defendants, Redbird also argued that (1) res ipsa loquitur "is not a cognizable claim under Ohio law, but only an evidentiary rule," (2) appellants' "conversion claim fails because any mineral interests alleged to be owned by [appellants] are interests in real property, not personal property," and (3) a business entity like Bethel Oil cannot recover emotional damages.

Reliable

{¶137} In its motion to dismiss, Reliable asserted that appellants' complaint only named one of its wells, the "Frost M" well, and that this well "has not been active in over a year." Reliable additionally argued that "public records show that this well in Rome Township, Athens County, is the only disposal well Reliable owns in Ohio" and that this well is "more than thirteen miles from any of the Bethel Oil wells listed in the Complaint."

{¶138} Reliable implored the trial court to evaluate appellants' complaint under the standard set forth in *Twombly*. Reliable contended that Ohio's "liberal pleading rules are not an all-access pass to plaintiffs, allowing them to escape any scrutiny at the motion to dismiss stage and proceed straight to discovery." Instead, Reliable asserted that under *Twombly*, "[t]he factual allegations in the complaint must be sufficiently detailed to provide a 'plausible' basis for relief." Reliable claimed that appellants' complaint "fails this test for two reasons. First, it fails to plausibly allege that wastewater from Reliable's distant disposal well reached [appellants'] production wells. And second, it asserts claims that are preempted by statute or are not recognized under Ohio law."

{¶139} Reliable argued that appellants' complaint "does not provide any factual support." Reliable faulted appellants for failing to include facts such as "the geology of the area around Reliable's Frost M well to try to show that it shares similar features to the Redbird #4 well" or to list "specific practices or defects at the Frost M well that might allow wastewater to escape containment." Reliable asserted that the ODNR report "found that the production contamination was due to unique

geology around Redbird #4" and that this same geology "was unlikely to be found near other local disposal wells."

**{¶140}** Reliable additionally asserted that the complaint failed to "explain how wastewater could migrate thirteen miles or more across county lines to affect [appellants'] wells." Reliable claimed that appellants did not allege "facts sufficient to plausibly support the claim that wastewater from Reliable's well entered any of its production wells." Reliable thus argued that appellants' complaint does not allege sufficient facts to indicate that appellants' "injuries were caused by Reliable's actions (negligence, negligence per se, and nuisance)" or "that Reliable intruded on its interests (trespass)." Reliable suggested that appellants have taken a "shotgun approach to litigation" by "target[ing] all area disposal well operators no matter how minor their role in the industry."

**{¶141}** Reliable further contended that appellants' "negligence per se claim is preempted by statute." Reliable claimed that the statutory provisions do not create a private right of action.

{¶142} Reliable also argued that (1) Ohio law does not recognize conversion claims for real property such as appellants' mineral estate, (2) appellants' res ipsa loquitur allegation is not an independent cause of action, (3) "damages" are not a cause of action, and (4) a business entity cannot sue for emotional damages.

{¶143} Reliable attached to its motion to dismiss a copy of the ODNR investigative report.  Reliable argued that because appellants' complaint cited this report, appellants essentially incorporated the entire report into their complaint.  Reliable thus asserted that the trial court could consider the report when ruling on its motion to dismiss.

Tallgrass

{¶144} Tallgrass asserted that appellants "have not made a plausible allegation that Tallgrass was the proximate cause of any wastewater damage to [appellants'] oil and gas wells." Tallgrass faults appellants for failing "to distinguish between [appellees] or [appellees'] conduct."  And like Redbird, Tallgrass argued that appellants "simply allege that someone, somehow caused wastewater to damage wells."

{¶145} Tallgrass cited a 1991 Ohio Supreme Court case involving one of the exceptions to Ohio's notice-pleading rules—*Byrd v. Faber*, 57 Ohio St. 3d 56, 60 (1991)—to support its assertion that appellants "'must plead the operative grounds relating to a claim for relief.' *Id.*" Tallgrass did not point out, however, that the Ohio Supreme Court has not applied this "operative grounds" rule to all civil pleadings.

{¶146} Moreover, Tallgrass cited a concurring justice's opinion to support the proposition that "Ohio courts have made clear that mere speculation, unsupported by operative facts, is not enough to state a claim" under Ohio's notice-pleading standard. *Maternal Grandmother v. Hamilton Cnty. Dept. of Job & Family Servs.*, 2021-Ohio-4096, ¶ 18 (Dewine, J., concurring). Tallgrass did not point out, however, that the majority opinion in *Maternal Grandmother* reaffirmed Ohio's liberal, notice-pleading rule and did not state that a complaint must allege "operative facts" to satisfy Ohio's notice-pleading standard.

{¶147} Tallgrass likewise cited several Ohio appellate court cases—none from this district—endorsing what arguably might be a heightened pleading standard.

{¶148} Tallgrass additionally characterized appellants' complaint as a "shotgun" pleading and cited federal district court decisions that suggest that "pleadings that attempt to hold different defendants accountable for each other's acts without ever alleging specifically what any one of them did" are invalid.

{¶149} Tallgrass also asserted that appellants' negligence claims contain "nothing but speculation, conjecture, and inference stacking." Tallgrass argued that appellants "not only fail to put [appellees], including Tallgrass, on proper notice for what conduct allegedly harmed what property, but also engage in rank speculation over whether there is any wrongful conduct on the part of Tallgrass and the other [appellees]."

{¶150} Tallgrass further claimed that appellants' complaint fails to allege facts to establish that Tallgrass's conduct was a proximate cause of appellants' alleged damages. Tallgrass contended that if appellants had focused on each defendant's activities individually rather than all of the defendants' activities collectively, appellants "would have noticed that many miles, other injection wells, and unaffected oil and gas wells—including those owned by [appellants]—fall between

Tallgrass's injection wells and [appellants'] allegedly injured wells."  Tallgrass argued that appellants thus failed to plausibly allege that Tallgrass was "the proximate cause of any wastewater damage to [appellants'] oil and gas wells." Tallgrass contended that the complaint does not allege a reasonable connection between their conduct and appellants' damages. Tallgrass asserted that appellants' allegation that Tallgrass "committed 'one or more' of thirty-three types of conduct, at some unspecified time, cannot establish causation between Tallgrass's actions and [appellants'] alleged property damage." Tallgrass stated that appellants failed "to meet their burden for showing Tallgrass proximately caused the harm described in the Complaint."

{¶151} In addition, Tallgrass argued that appellants' nuisance claim fails to state a claim upon which relief can be granted because appellants have not alleged "physical discomfort."  And like the other defendants, Tallgrass asserted that (1) res ipsa loquitur is not a cause of action, (2) appellants' conversion claim fails to allege that Tallgrass

converted personal property, and (3) a business entity, like

Bethel Oil, cannot recover emotional damages.[11]

{¶152} Tallgrass also referred to the ODNR report and

asserted that the trial court could consider it because

appellants' complaint cited it.

Appellants' Responses

{¶153} In response to Diversified/Deeprock's motion to

dismiss, appellants argued that their complaint "carefully

alleges that each of these [appellees] similarly inject large

volumes of toxic wastewater into subsurface formations that are

understood, and have been demonstrated, to allow for wastewater

exfiltration, migration, and destructive contamination of

shallower subsurface zones, including the Berea sandstone

formation and the areas within it where [appellants] lawfully

produce, and/or have the rights to produce, and market their

mineral interests."  Appellants stated that the complaint

"alleges that the nature of [appellees'] injection operations

---

[11] JDDC initially filed an answer to appellants' complaint. After the trial court granted the other appellees' motions to dismiss, JDDC filed a motion to dismiss, which we summarize at a later point in this appendix.

has contaminated these shallower zones and damaged the commercial value of [appellants'] property interests."

{¶154} Appellants asserted that the complaint mentions the ODNR report to establish "documented occurrence of this phenomenon in the area where, and under the conditions in which, [appellees] inject provides foundational notice that these allegations are not being made upon bare speculation or mere conjecture." Appellants claimed that "supporting evidence of [appellees'] wrongful contamination, as alleged, can and will be advanced at trial."

{¶155} In response to Redbird's motion to dismiss, appellants asserted that despite Redbird's claim that appellants' complaint is too opaque, Redbird had no trouble "describ[ing] exactly what it is [Redbird is] accused of in [its] Motion" to dismiss. Appellants contended that their "claims are straightforward" and that their complaint "carefully alleges that each of these [appellees] similarly inject large volumes of toxic wastewater into subsurface formations that are understood, and have been demonstrated, to allow for wastewater exfiltration, migration, and destructive contamination of shallower subsurface zones, including the Berea sandstone formation and the areas within it

where [appellants] lawfully produce, and/or have the rights to produce, and market their mineral interests." The complaint further alleges that "the nature of [appellees'] injection operations has contaminated theses shallower zones and damaged the commercial value of [appellants'] property interests."

{¶156} In response to Reliable's motion, appellants argued that their complaint satisfies Ohio's notice-pleading standard. Appellants did not agree with Reliable that the complaint must "detail the geology of the area around Reliable's wells to try to show that it shares similar features to Redbird #4, or discuss specific practices or construction defects at its well that allows wastewater to escape confinement, or explain how wastewater could migrate nine miles or more across county lines." Appellants instead asserted that these "factual issues [are] appropriately addressed through discovery, not [Civ.R.] 12(B)(6)."

{¶157} Appellants additionally contended that the court should not rely upon evidence outside of the complaint. Appellants stated that their "allegations stand on their own" and do not require incorporating the ODNR report. Appellants

also claimed that Reliable misrepresented some of the language used in the report.

{¶158} Appellants argued that their conversion claim involves "personal property in the form of the equipment they utilize to extract gas and oil from their wells and the revenue generated from such efforts."

{¶159} Appellants disagreed that res ipsa loquitur and damages cannot be the subject of a separate section of the complaint. Appellants further asserted that they could cure any deficiencies by filing an amended complaint. Appellants also pointed out that Reliable did not have any trouble summarizing the nature of appellants' claims against it and presenting a "factual rebuttal."

{¶160} In response to Tallgrass's motion to dismiss, appellants asserted that the complaint "plausibly alleges that Tallgrass has contaminated [appellants'] wells and damaged their property interests by injecting wastewater within sufficient proximity to damage it and at depths, into geologic substrata, and under circumstances that have been causally linked to such contamination, and [appellants] are not required to detail the

finer points of Tallgrass' operations that it already knows to plausibly plead their case."

Appellees' Replies

**{¶161}** Diversified/Deeprock argued that appellants did not refute any of the following: (1) "[t]he alleged findings of the ODNR report referenced in the Complaint do not mention or even allude to [Diversified/Deeprock's] wells"; (2) "[t]he sole allegation against [Diversified/Deeprock] connecting them to [appellants'] alleged injury is that they have injection wells somewhere in Washington and Athens counties"; (3) "[t]he Complaint against [Diversified/Deeprock] is based solely on conjecture from an ODNR report that has nothing to do with [Diversified/Deeprock]."

**{¶162}** Diversified/Deeprock contended that appellants' complaint contains "bare assertions" that "are nothing more than legal conclusions couched as factual statements." Diversified/Deeprock argued that "the findings of a single ODNR report that does not even reference [Diversified/Deeprock's] wells" are not operative facts to support the allegation that "every single injection well across two counties" has injured appellants. Diversified/Deeprock claimed that appellants' "wild

and speculative extrapolation of the ODNR report to conclude that injection wells across two counties have purportedly injured them is the exact type of conjecture that is precluded by even Ohio's liberal pleading standards."

{¶163} Redbird reiterated its argument that appellants have not alleged sufficient facts to establish standing. Redbird claimed that appellants did not allege which appellant owns the mineral interest, so they have not alleged a concrete and particularized injury. Redbird further asserted that appellants' complaint does not allege what property Redbird purportedly damaged, how the property was damaged, and when the property was damaged. Reliable replied that it "can do little more than guess what [appellants] think Reliable did wrong or carelessly."

{¶164} Tallgrass argued that the court can consider the ODNR report and the geographic location of the wells as shown on the ODNR website. Tallgrass asserted that appellants' allegation, "Upon information and belief, . . . it is reasonably certain that each and all of the herein-named Defendants have similarly contaminated and polluted the Berea Sandstone and/or other gas and oil reservoirs in Washington and/or Athens County and

damaged [appellants'] Property and their Property right," "is nothing but a conclusory allegation and is no bar to dismissal of a complaint." Tallgrass observed that appellants claimed that "supporting evidence of Tallgrass' wrongful contamination, as alleged, can and will be advanced at trial." Tallgrass stated that if appellants "have such evidence, it must at least be referenced or explained in the Complaint."

## THE TRIAL COURT'S DECISIONS

### Redbird

{¶165} On January 3, 2023, the trial court granted Redbird's motion to dismiss. The court noted that appellants' complaint alleged that Redbird's "actions or inactions" have contaminated appellants' property and have harmed appellants' "efforts for 'further development of gas and oil' in the future." The court found, however, that appellants' complaint failed "to identify who owns the minerals that have been damaged in order to establish who has standing to sue."

{¶166} The court observed that appellants' complaint arose out of an ODNR investigation that involved one of appellants' wells, "the B.P. Pinkerton #1 well." The court stated that the investigation found that contaminated water from Redbird's #4

well was responsible for the damage to appellants' B.P. Pinkerton #1 well.

{¶167} The court determined that appellants' complaint did not give Redbird "notice as to which other wells they allegedly damaged, when they damaged them[,] or how they damaged them." The court further determined that appellants did not "establish proximate cause between any additional damages to any other wells" and Redbird.

{¶168} With respect to appellants' claim involving res ipsa loquitur, the court found that this claim is not a separate cause of action, but rather, it is an evidence rule that permits an inference of negligence.

{¶169} As to appellants' conversion claim, the court recited case law that stated that conversion involves personal property and that an oil and gas lease creates an interest in real property.

{¶170} Regarding appellants' claim for emotional damages, the court noted that this claim related "to both Bethel Oil & Gas LLC and the Lane Plaintiffs." The court quoted case law indicating that corporations cannot suffer emotional distress.

{¶171} The court then granted Redbird's motion to dismiss.

WASHINGTON, 23CA5

Tallgrass

**{¶172}** On January 4, 2023, the court granted Tallgrass's motion to dismiss.  The court found that appellants' complaint does not allege "specific facts that tie [Tallgrass] to either the Redbird #4 well or to the damages" that appellants claim to have sustained.  The court determined that the complaint "lacks proximate cause connecting" Tallgrass to appellants' injuries.  The court recited the elements necessary to establish negligence and stated that the proximate-cause element requires a plaintiff to "allege 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'"  Tallgrass decision at 1-2, quoting *Queen City Terminals*, 73 Ohio St.3d at 618.

**{¶173}** The court further stated that to properly state a nuisance claim, appellants must establish that the nuisance caused physical discomfort.  The court stated that "'the law does not declare a thing a nuisance because * * * the property of another is rendered less valuable.'"  *Id.* at 2, quoting *Schoenberger v. Davis*, 8th Dist. Cuyahoga No. 45611, 1983 WL 5501, *6 (June 23, 1983).  The court did not provide any additional analysis.

{¶174} Next, the court stated that appellants' res ipsa loquitur is not a separate cause of action.

{¶175} With respect to appellants' conversion claim, the court stated that real property ordinarily is not subject to conversion. Instead, the court stated that a conversion claim requires a taking of identifiable personal property. The court found that appellants' conversion claim alleges that Tallgrass's conduct has "damaged the recovery of minerals from the real property involved herein" and that their complaint does not contain any allegations that Tallgrass has converted appellants' personal property.

{¶176} As to appellants' emotional-damages claim, the court found that business entities cannot recover emotional damages. The court thus granted Tallgrass's motion to dismiss appellants' complaint.

### Diversified/Deeprock

{¶177} On January 9, 2023, the court granted Diversified/Deeprock's motion to dismiss. The court stated that appellants did not give Diversified/Deeprock notice "as to what property they have damaged, when the property was damaged, who actually damaged what property nor whether the property damaged

was held in fee simple or were leased mineral rights." The court further found that appellants did not "provide[] sufficient proximate cause connecting" Diversified/Deeprock to their alleged injuries.

**{¶178}** The court stated that res ipsa loquitur is not a separate cause of action, appellants' conversion claim does not involve personal property, and appellants cannot assert a claim for damages for emotional distress to a business entity. The court thus granted Diversified/Deeprock's motion to dismiss.

Reliable

**{¶179}** On January 9, 2023, the trial court granted Reliable's motion to dismiss. The court found that "Reliable's sole well is located more than thirteen miles away from any of the Bethel oil wells listed in the Complaint." The court determined that appellants' complaint "does not contain any specific factual allegations that specifically relate to" Reliable's wells and that appellants "have failed to establish proximate cause connecting" Reliable to appellants' alleged injuries.

**{¶180}** The court additionally concluded that real property is not subject to a conversion claim, res ipsa loquitur is not a separate cause of action, and business entities cannot recover

damages for emotional distress. The court thus granted Reliable's motion to dismiss.

### JDDC's Motion to Dismiss

{¶181} After the trial court granted the foregoing motions to dismiss, JDDC filed a motion to dismiss. JDDC raised similar arguments to the other defendants.

{¶182} On March 1, 2023, the court granted JDDC's motion to dismiss. The court stated that appellants did not "identify who owns the mineral rights that have been damaged in order to establish who has standing to sue" and the complaint did not indicate "what claim for damages Plaintiff Sandra K. Lane may have." The court further determined that appellants' complaint does not give JDDC "notice of what wells they have damaged, when they were damaged or how [JDDC] are connected to the damaged wells." The court stated that the complaint does not contain any "factual allegations with regard to" JDDC, and the complaint fails "to establish proximate cause."

{¶183} The court further found that appellants' complaint fails to allege that they have suffered physical discomfort to support their nuisance claim, res ipsa loquitur is not a separate cause of action, real property is not subject to a

conversion claim, and business entities cannot recover damages for emotional distress.  The court granted thus granted JDDC's motion to dismiss.

### APPELLATE ARGUMENTS

#### Appellants

{¶184} Appellants argue that their complaint adequately notifies appellees of the claims raised against them and that it does not fail to state a claim upon which relief can be granted. Appellants assert that the complaint and the proposed amended complaint allege the following: (1) "each defendant group owns and operates certain, specifically-identified injection wells to inject waste fluids into the ground"; (2) appellees' "injection operations have damaged development of the mineral interest by flooding the gas and oil reservoirs in areas where Bethel has exclusive mineral rights"; (3) appellees "have collectively injected a cumulative volume of waste fluids under circumstances that allows for miles of horizontal and lateral movement of these fluids"; (4) appellees "inject millions of barrels of wastewater annually into the exact geographic area where these waste fluids are surfacing and where [appellees] have exclusive ownership of certain of the mineral acreage"; (5) appellees'

"injection wells maintain continuous injection intervals in this precise geographic area that promote upwards surface migration of waste fluids"; (6) appellees "inject in ways that violate regulations and promote migration"; (7) "the wrongful conduct of the other defendants combined to cause the harm to certain, specifically enumerated mineral acreage;" and (8) appellees' "operations have damaged and continue to damage [appellants'] business revenue and economic interests in the development of their mineral estate and jeopardize the leasehold itself as a consequence of regional, waste-fluid flooding of the subsurface."

{¶185} Appellants argue that the amended complaint further outlines "where the defendants inject, the years they have been injecting, the damaging manner in which they inject, the volumes they have injected to date, the specific depths and subsurface formations they have flooded, how their injection patterns have increased over time, and their collective injection of nearly three billion gallons of waste fluid into porous substrata in the last decade alone."  Appellants assert that "Ohio law makes the alleged damages actionable whether tortuously [sic] done by one or by many."

{¶186} Appellants contend that the trial court incorrectly dismissed the complaint based upon its finding that appellants had not established proximate cause between each defendant and the damaged Bethel wells. Appellants claim that the court imposed a heightened pleading burden on appellants that Ohio law does not support. Appellants note that the court found that appellants' complaint did not give appellees notice "as to which wells [appellees] allegedly damaged, when they damaged them or how they damaged them." Appellants claim that the trial court "misapprehend[ed] the actionable character of the damage being to the mineral estate as a whole." They assert that the court's decision contravenes the "express allegation that the entirety of the enumerated mineral acreage can no longer be developed, commercialized, or liquidated as a consequent of [appellees'] collective, regional flooding of the subsurface." Appellants contend that the pleading standard does not require them "to connect the dots to each contaminated well." Appellants contend that "[t]he Bethel wells are a part of the damaged property, but primarily as a conduit for commercial production of the mineral estate." Appellants allege that "[r]equiring [appellants] to connect all the dots between each injection well and each

flooded gas well to bring a case for combined harm to development of the mineral estate imposed an impermissible, irrelevant, impossible-to-meet standard on [appellants'] case."

**{¶187}** Appellants argue that appellees' arguments that appellants must connect each injection well to specific damage to one of the Bethel wells is "exceedingly factual in nature, requiring discovery and Rule 56 analysis even if [appellants'] case was confined to the Bethel wells."  Appellants claim that "the trial court essentially held [appellants] to an evidentiary standard at the pleadings stage by requiring them to 'establish proximate cause' between each specific well or acre."

**{¶188}** Appellants assert that the trial court's remaining findings regarding standing, nuisance, res ipsa loquitur, conversion, and emotional damages are not sufficient to dismiss appellants' complaint.  Appellants contend that to the extent that any pleading deficiencies existed, the trial court should have granted their motion to amend the complaint.

**{¶189}** Regarding standing, appellants argue that the complaint identifies appellants as Bethel Oil, a small business, Robert Lane, the owner of Bethel Oil, and Sandra Lane, who jointly own property.

{¶190} As to their nuisance claim, appellants assert that the trial court did not correctly interpret the law and based its decision upon "misrepresentative snippets of decisions." Appellants contend that contrary to the trial court's findings, they are not limited to damages for "physical discomfort." Appellants argue that damages for nuisance also may include the loss of use and enjoyment of their property.

{¶191} Regarding their "res ipsa loquitur" claim, appellants contend that even if it is not an independent cause of action, they nonetheless could assert the theory in their complaint.

{¶192} As to conversion, appellants state that the trial court "ignore[d] decisions permitting mineral conversion claims and ignore[d] the conversion of [appellants'] well infrastructure (equipment, tools, casing, etc.) that defendants have effectively converted into repositories for their injected waste-fluids."

{¶193} Appellants additionally argue that the trial court abused its discretion by denying their motion to file an amended complaint.

### Redbird

{¶194} Redbird argues that appellants' complaint does not

"meaningfully identify[] what property was damaged." Redbird asserts that the allegation that appellants own "approximately 1,471 acres in Washington County, Ohio and 2,317 acres in Athens County, Ohio," along with "equipment, business infrastructure, and manpower to commercially develop gas and oil" is vague and "does not specifically enumerate any mineral acreage."

{¶195} Redbird further contends that the complaint does not "link any specific action of any of the [a]ppellees to any particularized damage allegedly caused to the unidentified 'mineral estate.'"

{¶196} Redbird stated that the complaint's remaining allegations likewise are "vague and general allegations that amount to nothing more than unsupported conjecture." Redbird claims that appellants "seek[] to extrapolate a limited and temporary incident involving one injection well into an ongoing, chronic and widespread occurrence across two counties without providing any level of detail or support." Redbird faults appellants for failing to specify what property the Redbird defendants allegedly damaged or "how and when the property was damaged."

{¶197} Redbird additionally argues that (1) appellants'

complaint does not show that they have standing, (2) res ipsa loquitur is not a separate cause of action, and (3) appellants' cannot maintain a conversion claim for their mineral estate, which is real property.

## Deeprock

{¶198} Deeprock argues that appellants' complaint contains only two specific allegations against it and that neither sufficiently notifies Deeprock of appellants' claims.  The two specific allegations state (1) how each entity is organized and (2) Deeprock owned, operated and/or managed one of more injection wells in Washington and/or Athens County.  Deeprock asserts that appellants' claims are based solely on the allegation that Deeprock operates injection wells.

{¶199} Deeprock further contends that appellants' complaint makes "a leap in logic" from the ODNR report to conclude that appellees are responsible for appellants' alleged damage. Deeprock claims that appellants "are essentially speculating, without any well-pled facts specific as to any Defendant in support, that Deeprocks' [sic] injection wells somehow caused damage to them."  Deeprock states that appellants' allegations "are merely legal conclusions couched as factual statements."

{¶200} Deeprock also complains that appellants' complaint lacks "specific allegations," which leaves it unable to "properly evaluate the case" or to "possibly know what defenses to assert without more notice of when, where, and how they specifically purportedly harmed [appellants]." Deeprock asserts, for example, that the complaint does not "identify the specific property rights" that Deeprock allegedly has damaged. Deeprock contends that it has "no idea what property they purportedly invaded—was it property owned in fee simple by [appellants], leased mineral rights, equipment, or all of the above?"

{¶201} Deeprock also asserts that (1) res ipsa loquitur is not a cause of action, (2) real property is not subject to conversion, (3) appellants have not alleged that the Deeprock appellees took physical possession of any of their "equipment, tools, [or] casing," and (4) business entities cannot suffer emotional damages.

### Diversified

{¶202} Diversified first asserts that the proper standard of review is the abuse-of-discretion standard of review applicable to Civ.R. 15(A) motions to amend a pleading. Diversified

alleges that this standard of review governs because appellants have limited the requested relief to a judgment that reverses the trial court's decision that denied their motion to amend the complaint.

{¶203} Diversified further contends that appellants' complaint fails to satisfy the notice-pleading standard. They recognize that appellants' complaint identifies each entity, along with its organizational structure, and asserts that "upon information and belief" Diversified owns, operates "and/or" manages one or more injection wells in Washington or Athens County. Diversified asserts, however, that the claims for relief contained in the complaint do not specifically identify which entity caused appellants' damages. Diversified faults appellants for lumping all of the defendants together when stating each claim for relief. Diversified asserts that the complaint improperly treats appellees as "in effect identical and indistinguishable tortfeasors" and fails to separate the claims according to each appellee's specific operations.

{¶204} Diversified also argues that the complaint makes "a leap of logic" by using the ODNR report to cast all of the well-injection operators as similar tortfeasors. Diversified

contends that the complaint indicates that appellants do not have any "information to substantiate that any of [Diversified's] activities are contaminating [appellants'] wells; if they did, presumably, [a]ppellants would have asserted it." Diversified further asserts that the complaint does not contain any "allegations that the specific wells operated by [a]ppellees impacted [a]ppellants' wells in any manner." Diversified faults appellants for failing o allege "the basic 'who,' 'what,' 'when,' and 'where' so [appellees] could know at least the bare minimum about the claims against them."

**{¶205}** Diversified also argues that the trial court did not abuse its discretion by denying appellants' motion to amend their complaint. Diversified contends that the amendment does not cure the deficiencies of the initial complaint. As an example, Diversified states that the amended complaint does not contain "a specific description of the manner in which the [a]ppellees proximately caused [a]ppellants' alleged injuries." Diversified asserts that "[s]imply operating an injection well, without more, is not sufficient grounds to proceed under Ohio law." Diversified further alleges that the complaint fails to

set forth any facts that establish "a direct correlation between [appellants'] asserted injuries" and Diversified's conduct.

{¶206} Diversified additionally contends that because each appellee's operations are different, appellants cannot "paint all the [a]ppellees with such a broad brush by grouping them together in effect as one amorphous tortfeasor." Diversified asserts that Ohio law requires appellants "to allege at least some plausible facts as to how each of the defendants . . . have proximately caused their injuries." Diversified charges that appellants have "failed to make a prima facie showing that their claims against [a]ppellees are viable."

{¶207} Regarding appellants' conversion claim, Diversified argues that appellants' complaint fails to allege conversion of any personal property. Diversified further asserts that res ipsa loquitur is not an independent cause of action.

### Tallgrass

{¶208} Tallgrass asserts that the trial court correctly dismissed appellants' complaint. Tallgrass contends that the complaint does not (1) satisfy Ohio's pleading standards, (2) allege proximate cause, or (3) contain any "valid claims under Ohio law."

{¶209} As to the first argument, Tallgrass alleges that Ohio's notice-pleading standard (1) "does not eliminate the need for a properly researched and factually-supported causes of action," (2) requires the complaint to allege "operative facts," and (3) requires factual allegations to support legal claims. Tallgrass claims that appellants' complaint "fails to identify any specific conduct by Tallgrass that harmed Bethel." Tallgrass argues that appellants' complaint contains only two specific allegations regarding Tallgrass: (1) Tallgrass's legal structure; and (2) Tallgrass owns, operates, "and/or" manages "one or more" injection wells located in Washington "and/or" Athens County. Tallgrass contends that these two "nebulous allegations do not provide Tallgrass notice of the operative facts underlying the claims against it, and thus fail to satisfy Ohio's pleading standard." Tallgrass further asserts that the rest of appellants' complaint simply speculates that the ODNR's finding that the Redbird #4 well damaged one of appellants' wells means that all of the other injection-well operators in the area "must be liable for harm to that well and to three other Bethel wells in its immediate vicinity."

{¶210} Tallgrass states that the complaint fails to contain any "factual allegations distinguishing between the various injection-well operators [appellants] sued" or to place "each [a]ppellee on notice of what, exactly, [each] did to harm" appellants.  Tallgrass contends that the complaint does not provide any "information on how any [a]ppellee, aside from Redbird, took any action harming Bethel."  Tallgrass asserts that appellants' complaint is based upon "a host of assumptions and beliefs that are directly inconsistent with the ODNR report."  Tallgrass argues that the ODNR Report "only addresses a single operator, Redbird, and is at direct odds with [appellants'] speculation that others such as Tallgrass could have caused [appellants'] injury."

{¶211} Tallgrass further alleges that appellants' complaint is a "shotgun pleading" and that Ohio law does not allow these types of pleadings.  Tallgrass recognizes that the Ohio Supreme Court never has addressed shotgun pleadings but claims that in the absence of guidance from the Ohio Supreme Court, Ohio appellate courts "rely on the federal standard."  Tallgrass cites several federal district court decisions denigrating "shotgun pleadings" or pleadings that do not differentiate among

defendants.  Tallgrass contends that the complaint does not "explain[] what each operator did.  Or how what that operator did caused the injury to Bethel's wells."

{¶212} Tallgrass further argues that the complaint does not allege how Tallgrass proximately caused appellants' injuries. Tallgrass asserts that the complaint fails to allege "'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" Tallgrass Brief at 10, quoting *Queen City*, 73 Ohio St.3d at 618. Tallgrass also contends that "the location of the allegedly-damages Bethel wells directly contradicts the speculation Bethel advanced in its Complaint."  To support this assertion, Tallgrass refers to a map that shows the location of appellants' wells in relation to the Redbird #4 well.  Tallgrass claims that appellants' purportedly damaged wells are located in the same cluster and "on the same east-northeast vector ODNR identified, from its water samples, as the likely path for migration of wastewater from Redbird #4."  Tallgrass contends that appellants' theory of liability rests upon "guilt-by-geographic-association."

{¶213} Regarding appellants' nuisance claim, Tallgrass asserts that "property damage," as appellants have alleged, does not constitute a nuisance. Tallgrass contends that nuisance requires a property owner to "experience some sort of physical discomfort" and does not allow a property owner to recover damages related to the loss of use and enjoyment of the property. Tallgrass additionally alleges that appellants' complaint fails to explain how each appellee "intentionally, recklessly, or negligently invaded [appellants'] interest in the use and enjoyment of [their] property."

{¶214} As to appellants' res ipsa loquitur claim, Tallgrass asserts that the trial court properly dismissed this claim because it is not a valid cause of action.

{¶215} Tallgrass further argues that the trial court properly dismissed appellants' conversion claim because the complaint fails (1) to allege that Tallgrass converted personal property, (2) to identify any wrongful act that Tallgrass committed, and (3) to indicate that Tallgrass took possession of any personal property.

{¶216} Tallgrass additionally contends that the trial court correctly dismissed appellants' claim for emotional damages

because a business entity like Bethel Oil cannot recover emotional damages.

**{¶217}** With regard to appellants' motion to amend the complaint, Tallgrass asserts that the trial court did not abuse its discretion by overruling appellants' motion. Tallgrass claims that the amendment does not correct the deficiencies contained in the initial complaint.

### JDDC

**{¶218}** JDDC asserts that appellants failed to "credibly allege that [JDDC's] large-volume, high pressure waste fluid injection operations . . . collectively caused flooding damage to the development of [appellants'] mineral estate." JDDC points out that appellants allege in their appellate brief that "it is practically undisputed that Redbird flooded a portion of the Bethel mineral estate without permission." JDDC states that appellants have not, however, made a similar allegation against JDDC. JDDC thus asserts that appellants "implicitly admit that they have presented no evidence that any [appellee] other than Redbird flooded [appellants'] mineral estate without permission." JDDC asserts that without this type of evidence, appellants' claims "fails as a matter of law."

{¶219} JDDC further argues that appellants' complaint does not establish that they have standing to sue JDDC. More specifically, JDDC claims that appellants have not alleged that they suffered an injury that is fairly traceable to JDDC's allegedly wrongful conduct. JDDC further asserts that appellants' complaint does not identify who owns the mineral rights that have been damaged and does not specify what claim Ms. Lane may have.

{¶220} Like some of the other appellees, JDDC contends that the complaint "contains only 2 allegations specifically addressing JDDC" and claims that those two allegations do not state a cognizable claim. JDDC asserts that the complaint does not contain operative facts and fails to provide notice of which wells JDDC damaged, when they were damaged, or how JDDC is connected to the damaged wells.

{¶221} JDDC also faults appellants for grouping all of the appellees together without specifying what each one allegedly did. JDDC asserts that appellants did not cite any case "in which multiple Appellees were found jointly and severally liable without evidence presented as to each individual Defendant." JDDC additionally contends that appellants' complaint does not

contain any "evidence or reasonable explanation" how the waste fluids JDDC injected migrated many miles in order to contaminate appellants' property. JDDC further claims that it does not own any wells in Washington or Athens County. JDDC thus argues that appellants' complaint fails to show that JDDC's conduct proximately caused appellants' injuries.

{¶222} JDDC contends that the trial court properly dismissed appellants' nuisance claim because appellants do not allege that the alleged nuisance caused them "physical discomfort." And like the other appellees, JDDC asserts that (1) res ipsa loquitur is not an independent cause of action, (2) appellants' conversion claim fails to allege that appellees took appellants' personal property, and (3) a business entity like Bethel Oil cannot suffer emotional damage.

### Appellants' Replies

{¶223} Appellants do not agree with appellees' characterizing their complaint as a "shotgun" complaint. Appellants assert that they "made the same allegations against all defendants below because they all engage in the same wrongful conduct." They contend that their complaint "alleges actionable damage to their mineral estate from each defendant, and identifies a

number of factors providing a basis for bringing the identified claims against" each defendant. Some of those factors include the following: (1) "the documented contamination of [a]ppellants' wells by Redbird #4 Class II Injection Well waste fluid"; (2) "other oil and gas wells in the region have been similarly contaminated"; and (3) "the nature of demonstrated impacts to oil and gas wells from contamination, including significantly increased pressures from the volume of waste fluid contamination, similarities in the type and scope of operations each defendant has conducted, the proximity of each defendant's injection well to [a]ppellants' wells in comparison to documented sources of contamination, and physical characteristics of each [appellee]'s operations (including depth of wells and the geological features of the ground drilled)."

{¶224} Appellants argue that appellees' briefs are replete with "mischaracterization[s] of Ohio pleading law as requiring a plaintiff to establish his allegations with proof." Appellants contend that their use of the ODNR report is to place appellees "on notice that the waste-fluid-flooding phenomenon [a]ppellants describe *is actually happening*." (Emphasis in original). Appellants stated that they have "not simply allege[d] that

[appellees] are responsible by virtue of them injecting waste fluids." Instead, their complaint "pointedly put[s] the [a]ppellees on notice that they are being sued because they inject waste fluids in an actionable manner that fosters and promotes damaging exfiltration and migration."

**{¶225}** Regarding appellees' argument that the complaint does not "identify the mineral estate with any particularity," appellants contend that the complaint identifies (1) "the number of [a]ppellants' acres that have been damaged for future gas and oil production and development," (2) "the counties in which each set of acreage is situated," and (3) the name and API number of the waste-water-flooded wells." The complaint further alleges "actionable injection conduct that has combined to cause harm to the development of the mineral estate." (Emphasis omitted).

**{¶226}** Regarding appellees' arguments that appellants' complaint does not identify any specific wrongful conduct, appellants retort that appellees' arguments are "patent misstatement[s]" when the complaint is "inundated with references to the specific conduct at issue being the actionable, flooding manner of each defendant's injection

operations."  Moreover, the complaint identifies "at least 32 specific acts and/or omissions."

{¶227} Regarding appellees' proximate-cause arguments, appellants do not disagree that they eventually must present evidence to establish that appellees' conduct proximately caused appellants' injuries.  They vehemently disagree, however, that they must present this evidence at the pleading stage. Appellants further assert that appellees attempt to raise factual and evidentiary issues that would be appropriate if discovery had occurred and appellees had filed summary-judgment motions.  Appellants contend that these types of arguments are wholly inappropriate at the motion-to-dismiss stage.